# STATE OF VERMONT

# ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| **In re New Cingular Wireless, d/b/a AT&T** | } | **Docket No. 162-7-08 Vtec** |
| **Sousa Telecommunications Permit** | } | **(Appeal from Cabot ZBA CU Decision)** |
| **(Appeal of Newton, et. al.)** | } | |
| | } | |

## Corrected Decision on Cross-Motions for Summary Judgment[1]

New Cingular Wireless PCS, LLC, d/b/a AT&T (hereinafter "Applicant" or "AT&T") seeks to install six panel antennas on one of the two preexisting farm silos on the property of Mary Sousa at 352 Bolton Road in Cabot. This appeal arose after the Cabot Zoning Board of Adjustment ("ZBA") granted a conditional use permit to install the proposed antennas and related support equipment. Fourteen individuals[2] ("Appellants") filed a petition with the ZBA and have appealed the ZBA's decision to this Court, alleging that the facility will violate the Town and Village of Cabot Zoning Regulations ("Regulations") and will adversely affect property values in the area.

Applicants are represented by William J. Dodge, Esq.; Appellants are represented by Jared M. Margolis, Esq.; the Town of Cabot ("Town") is represented by Paul S. Gillies, Esq.

Appellants and Applicants have each presented the Court with a cross-motion for summary judgment. Appellants argue that the ZBA should not have issued Applicants a conditional use permit for the proposed facility because it will have more than a de minimus impact on the applicable zoning criteria. Appellants also insist that remand is necessary to cure certain defects in the ZBA's decision-making process.

AT&T challenges the Court's jurisdiction to hear this appeal, asserting first that Appellants' appeal was untimely, and second, that all fourteen Appellants lack standing to challenge the ZBA's decision. Applicants further assert that most of the municipal regulatory

---

[1] This Decision is issued to correct an inaccurate reference to the status of a related proceeding concerning Applicant's Act 250 application. These inaccuracies, located on pages 6 and 7 of this Decision, have been corrected.

[2] This petition originally contained the names of seventeen individuals. Those who have appealed to this Court total fourteen: Andrew Leinoff, Gwenyth Jones, Steven Stahl and Sheri Stahl (all of whom own and occupy property in the immediate neighborhood); Janet Newton, Dale Newton, Diane Hulling Reed, Mary Cobb, R.D. Eno, Gerson Katz, Kelly Knowton, Lorinda Knowlton, Dale Tetreault, and Michelle Tetreault. The petitioning Appellants have named Janet Newton as their representative, pursuant to 24 V.S.A. § 4465(b)(4).

provisions upon which Appellants rely are preempted by applicable federal law, and that, in any event, this Court should conclude in this de novo proceeding, as the ZBA determined below, that the wireless facility will have a de minimus impact, therefore warranting the issuance of a conditional use permit as a matter of law, and thereby negating the need for a hearing on the merits. Lastly, Applicants assert that if the Court concludes that summary judgment is inappropriate, this matter should proceed to trial, since the remand Appellants suggest is inappropriate.

The Town has responded to the pending motions by expressing support for the timeliness of Appellants' appeal and defending both the lawfulness of the challenged regulatory provisions and the ZBA's de minimus determination.

### Factual Background

For the purpose of putting the pending cross-motions into context, we recite the following facts, which we understand to be undisputed unless otherwise noted:

1. Applicants are Mary Sousa, the owner of property located at 352 Bolton Road in the Town of Cabot, and New Cingular Wireless d/b/a AT&T, a federally licensed telecommunications provider authorized to operate in the State of Vermont in general and the Town of Cabot in particular.

2. Appellants are fourteen individuals living either adjacent to the Sousa property or elsewhere within the Town.[3] When they filed their petition with the ZBA (as noted in paragraph 10 below), Appellants identified Janet Newton as their representative, a delegation that is required under 24 V.S.A. § 4465(b)(4). Andrew Leinoff, Gwenyth Jones, Steven Stahl, and Sheri Stahl all own property that abuts or is near the Sousa property; the ten remaining Appellants, all of whom signed the original petition to the ZBA, represent that they either own property or are voters in Cabot or adjoining towns. All fourteen Appellants have filed this appeal in a common Notice of Appeal and have filed a common Statement of Questions.

3. AT&T's predecessor business entity filed the initial municipal conditional use and zoning permit applications on March 10, 2008. The pending applications always included the proposal to install six panel antennas near the top of the eastern most farm silo on the Sousa property.

---

[3] The exception to this representation appears to be Janet and Dale Newton, who AT&T assert are residents of the Town of Marshfield. AT&T's Statement of Undisputed Material Facts at ¶ 21, which Appellants admit to in their response.

Each antenna is proposed to be flush-mounted to the silo's exterior, fifteen feet below the dome of the eighty-foot silo. AT&T represents that the antennas will be similar in color to the silo, thereby making the antennas somewhat unnoticeable. Appellants do not appear to contest this aesthetic point.

4. The original applicant first proposed to house the telecommunications support equipment, including fans, air conditioning, and back-up power generation equipment, wholly within the silo. A door would be cut into the base of the cement silo for access to the support equipment.

5. When concerns were expressed about whether the silo's possible future use for agricultural purposes would be permanently compromised by cutting an access door and placing the equipment in the silo, the original applicant agreed to amend its plans by including a free-standing equipment storage shed, fabricated off-site and to be located next to the silo. Due to a directive contained in the telecommunications provisions of the Regulations (Article 5), Applicant included in its plans a six-foot-high fence to surround the proposed ten-foot by twelve-foot equipment storage shed. See Regulations § 5.7(c).

6. The Regulations also require all telecommunications facilities to be set back at least 1,500 feet from residences. Regulations § 5.7(M)(2). The antennas, support equipment, and storage shed would be within 1,500 feet of five residences, the closest of which would be the Sousa residence, which is across Bolton Road and less than 300 feet away from the preexisting silo.

7. On March 13, 2008, the Town of Cabot Zoning Administrator referred the application for conditional use review to the ZBA. Applicants specifically requested conditional use approval and a determination that the proposed silo antennas and support equipment would have no more than a "de minimus" impact.

8. On April 21, 2008, the ZBA conducted its first public hearing on the conditional use application; a second ZBA hearing was held on April 28, 2009. During the ZBA hearings, some of Appellants[4] expressed their concerns, contending that property values will decline "as a result of the perception of health hazards" associated with telecommunications facilities and "by virtue of the violation of the zoning setback requirements." Town of Cabot Zoning Board of

---

[4] The record reveals that Janet Newton, the spokespersons nominated in the petition Appellants' filed with the ZBA, spoke at the May 19, 2008 ZBA hearing. Appellants Andrew Leinoff, Gwenyth Jones, Steven Stahl and Sheri Stahl also participated in the ZBA proceedings.

Adjustment, Meeting Minutes, at 2 (Apr. 21, 2008).[5] These same Appellants also submitted a series of scientific studies[6] suggesting that the perceived health effects of nearby telecommunications facilities can negatively affect residential property values. See Objection of Andrew Leinoff & Gwenyth Jones to the Unicel/Sousa Telecommunications Transmitter Proposal, at app. B (Apr. 21, 2008) [hereinafter Objection].[7] Appellant Janet Newton, as the representative nominated in the petition Appellants filed with the ZBA, offered further comments.

9.      A day after the April 21 hearing, Applicants submitted a $10,000 permit fee, which was intended to pay the expenses associated with any independent consultants the ZBA retained in its review of the pending applications.

10.     The ZBA held a third and final public hearing on May 19, 2008. During this hearing, Janet Newton submitted a petition to the ZBA, requesting that the petition's seventeen signatories receive Interested Person status and designating herself as their representative. The petition indicated that the signatories were interested in ensuring "that the provisions of the [municipal bylaws concerning telecommunications facilities are] given due consideration in this instance" and concerned that the relationship between federal law and local regulations regarding the "placement, construction, and modification of personal wireless service facilities [is] thoroughly addressed." Petition to Cabot Zoning Board of Adjustment, at 1 (May 19, 2008).[8]

11.     A day later, the ZBA Chair sent Ms. Newton an email notification that the ZBA had denied Interested Person status to the seventeen signatories on the petition. In his explanation, Chair Folsom stated that "[t]here was [sic] only three signatures that met the requirement to be able to sign the petition. . . . The rest of the signatures did not attend the April 21, 2008 meeting and sign in." E-mail of Roy Folsom, Chairman of the Cabot Zoning Board of Adjustment to Janet Newton (May 20, 2008).[9]

12.     On June 6, 2008, the ZBA held a deliberative session concerning Applicants' applications, ultimately deciding to approve the conditional use and zoning permit requests.

---

[5] Applicants have submitted the Minutes as appendix Q to Exhibit 1 in their Motion for Summary Judgment.

[6] The authors of these studies did not testify before the ZBA and, as such, were not available for inquiry or cross-examination. In these appeal proceedings, there has not been a foundation offered for the admissibility of these documents.

[7] AT&T supplied a copy of Appellants' Objection as Exhibit 3 to its Motion for Summary Judgment.

[8] Appellants submitted a copy of the Petition as Exhibit 6 to their Motion for Summary Judgment.

[9] Appellants submitted a copy of the e-mail as Exhibit 7 to their Motion for Summary Judgment.

Minutes of the June 6, 2008 deliberative session were prepared, although the record before us does not reveal the date those minutes were prepared, nor does it reveal when the Board entertained a motion to approve those minutes. These minutes were signed by Chair Folsom.

13. The parties appear to dispute whether the ZBA distributed its June 6, 2008 minutes to the parties who appeared at the ZBA hearings. Appellants assert that they were not sent copies of the June 6th meeting minutes, and Chair Folsom appears to confirm that representation. In any event, AT&T and Appellants' representatives independently discovered a copy of these minutes that had been filed in the Cabot Land Records. These minutes were accompanied in the Land Records recording by a copy of the front page of the zoning application, the lower half of which included a check mark, noting that the ZBA had granted Applicants' zoning permit request. It was signed by Chair Folsom and dated June 6, 2008, and referenced the June 6, 2008 minutes with a notation "see attached decision."

14. The ZBA thereafter issued a formal ten-page decision on Applicants' conditional use permit application, dated July 2, 2008. In re: RCC/Sousa Application, Town of Cabot Zoning Board of Adjustment Decision (July 2, 2008) [hereinafter ZBA Decision].[10] The ZBA provided copies of this Decision to Applicants, Appellants, and other persons who attended the ZBA hearings.

15. The ZBA Decision provides a detailed recitation of the ZBA determinations, including that the proposed facility would have a de minimus impact on the surrounding area and overall pattern of land development. Id. at 3. The ZBA also examined all the bylaw provisions applicable to the conditional use approval of telecommunications facilities. Id. at 4–10. Despite acknowledging certain nonconformities, the ZBA ultimately granted Applicants authority to erect the proposed wireless telecommunications facility, concluding that any impact would be de minimus. Id. at 10.

16. The ZBA Decision notes that several Appellants attended the ZBA hearings, including Janet Newton, their designated representative. Interestingly, the Decision makes no mention of party status determinations.

17. Appellants filed a notice of appeal with this Court on July 31, 2008. Appellants' notice specifically notes that their appeal was taken from the July 2, 2008 ZBA Decision.

---

[10] Appellants submitted an unsigned copy of the ZBA Decision as Exhibit 1 to their Motion for Summary Judgment.

**Procedural Background**

AT&T, as the successor in interest to the original applicant, is seeking all local, state, and federal approvals needed for the installation and operation of the telecommunications facilities to be located on or adjacent to the Sousa farm silo. When an Act 250 land use permit was issued to AT&T's predecessor, several of the same neighbors who appear in this municipal proceeding appealed the Act 250 permit to this Court. See In re RCC Atlantic, Inc. and Sousa (Appeal of Jones and Leinoff), No. 163-7-08 Vtec (Vt. Envtl. Ct. May 8, 2009) (Durkin, J.). In response to the parties' cross-motions for summary judgment in the Act 250 proceeding, this Court entered summary judgment affirming the permit issued by the District 5 Environmental Commission. Id. at 9. That Decision was not appealed and has therefore become final.

The pending appeal of the municipal conditional use determination was filed with this Court on July 31, 2008. On September 18, 2008, the applicant served its Notice of Removal of the proceedings to the United States District Court for the District of Vermont. Thus, this Court's jurisdiction over these appeal proceedings was removed, until it was returned by order of the federal district court. See Jones v. RCC Atlantic, Inc., No. 1:08-CV-196 (US Dist. Ct. Vt. Jan. 12, 2009). In its decision returning jurisdiction to this Court, the federal district court announced its determination that while the pending appeal did entertain some questions of federal law, such questions did not arise within the context of statutes that provided exclusive jurisdiction to the federal courts, thereby preempting a state court's jurisdiction over a claim or defense. Id. at 4–8. The federal district court went on to note that state courts are capable of addressing "ordinary preemption" issues, id. at 8, which the district court defined as a state court's authority to determine that a federal law preempts the assertion of a claim in state court. Id. at 8 n.8.

We note these details of the federal district court's determinations, since the parties have addressed in their legal memoranda the propriety of this Court determining whether applicable federal law preempts some or all of the claims that Appellants continue to assert here. We understand the district court's determination to include that this Court has the jurisdictional authority, if appropriate under the doctrine of "ordinary preemption," to adjudicate such defenses.

Our prior decision in the Act 250 proceeding—In re RCC Atlantic, Inc. and Sousa (Appeal of Jones and Leinoff), No. 163-7-08 Vtec (Vt. Envtl. Ct. May 8, 2009) (Durkin, J.)—

provided a factual background section that includes descriptions of the proposed project that are similar to the descriptions contained above. We found reference to this prior decision helpful for the purpose of providing context in this proceeding. However, to the extent that we have relied on a factual background here, it has been gleaned from the record in these proceedings.

## Standard of Review

Both Appellants and Applicants here assert in their respective motions that summary judgment is appropriate and that a trial is unnecessary to resolve this appeal, although the result each party suggests is, of course, quite opposite. As has been often noted, summary judgment is an extraordinary remedy, for the very reason that it deprives the parties of the opportunity to present evidence at a trial. Provost v. Fletcher Allen Health Care, Inc., 2005 VT 115, ¶ 17, 179 Vt. 545 (2005) (mem.) ("[B]ecause of its severe consequences, summary judgment should be granted cautiously so that no one will be improperly deprived of a trial of disputed factual issues." (quoting Margison v. Spriggs, 146 Vt. 116, 118 (1985))). Summary judgment is only appropriate where it is established that there is no genuine issue of material fact and that a party is entitled to judgment as a matter of law. In re Eustance Act 250 Jurisdictional Opinion (#2-231), 2009 VT 16, ¶14 (citing V.R.C.P. 56(c)(3)). When, as here, "both parties move for summary judgment, each is entitled to the benefit of all reasonable doubts and inferences when the opposing party's motion is being judged." City of Burlington v. Fairpoint Communications, 2009 VT 59, ¶5. We proceed with our review of the pending motions in that fashion.

## Discussion

The parties' respective motions touch upon all legal issues raised in Appellants' ten-point Statement of Questions. AT&T also makes general challenges to the timeliness of Appellants' appeal and the standing of Appellants to file an appeal. Since these latter issues go to the foundation of this Court's authority to hear this appeal, we first address AT&T's timeliness and standing challenges. Subsequent sections of this Decision address the remaining issues raised in the parties' filings.

## I.     Timeliness of appeal; standing to appeal

AT&T first argues that this Court lacks jurisdiction because Appellants' notice of appeal was untimely, asserting that the ZBA rendered its decision to grant Applicants conditional use approval on June 6, 2008, and that since Appellants did not file their notice of appeal until July 31, 2008, their appeal was not timely filed. Appellants counter that the ZBA's final decision was not issued until July 2, 2008, and that their July 31 appeal was therefore timely filed. For the reasons detailed below, the Court concludes that Appellants' appeal was timely.

An appeal must be filed with the Environmental Court "within 30 days of the act or decision" of the municipal panel. 24 V.S.A. § 8504(b)(1); V.R.E.C.P. 5(b)(1). The thirty-day "appeal period does not begin to run until either the board files a written decision or the period for doing so . . . has expired." In re White, 155 Vt. 612, 615 (1991). "[S]ome ministerial act we can regard as a written decision must take place in order to trigger the running of the [thirty-day] appeal period." In re Miller, 170 Vt. 64, 76 (1999) (quoting George v. Timberlake Assocs., 169 Vt. 641, 643 (1999)(mem.)). However, the Supreme Court has expressed "concern that organs of municipal government not take actions that tend to 'bury' decisions so that interested parties lose their appeal rights." Timberlake Assocs., 169 Vt. at 642. The Court is convinced that an unannounced set of minutes filed in the Land Records but not timely distributed to the participants in the municipal proceeding is the type of acts that gave rise to the Supreme Court's concern.

The record indicates that the ZBA resolved to grant Applicants a permit during the June 6 deliberative session. This ZBA determination is reflected in its June 6, 2008 minutes, and in the notation that made its way into the Cabot Land Records. Were this the only memorial of the ZBA determination, and were it uncontested that the ZBA distributed these minutes in a timely manner to the parties who attended the ZBA hearings, we would agree with AT&T that the minutes and this notation on the application memorialized the controlling ZBA decision.

We are left to wonder why the ZBA chose not to disseminate its June 6 minutes to the parties.[11] But we need not concern ourselves with that, since the ZBA saw fit to issue a written decision on July 2, 2008, and to deliver that decision to all parties. Thus, we rely upon the determination the ZBA apparently made that a formal decision needed to be issued; it is that July

---

[11] We recognize that this fact is disputed. However, we are directed to view this material fact in a light most favorable to Appellants, as the non-moving party. Fairpoint, 2009 VT 59, ¶5.

2, 2008 ZBA Decision that is specifically referenced in Appellants' Notice of Appeal. We concur with the Town's assertion that the July 2, 2008 ZBA Decision is the operative announcement of the ZBA's determinations. Therefore, we conclude that Appellants' July 31, 2008 appeal to this Court is not time-barred.

AT&T also argues in their pending motion that this Court is without jurisdiction because Appellants lack standing to challenge the ZBA Decision. Our Legislature has established that interested persons (as defined in 24 V.S.A. § 4465) who have participated (as defined in 24 V.S.A. § 4471) in municipal hearings have standing to challenge the determinations made in those municipal proceedings. 10 V.S.A. § 8504(b)(1). AT&T does not dispute that Appellants or their representative participated in the hearings, but argues that Appellants do not qualify as interested persons pursuant to 24 V.S.A. § 4465. To answer this question, we must review the applicable requirements of § 4465.

We first address AT&T's challenge to Appellants' interested person status under § 4465(b)(4), which provides such status upon "[a]ny ten persons who may be any combination of voters or real property owners within [the project municipality or an adjoining municipality], who, by signed petition . . . , allege that any relief requested . . . will not be in accord with the policies, purposes, or terms of the" municipal bylaws. 24 V.S.A. § 4465(b)(4). The record before us reveals that Appellants have fulfilled these statutory obligations.

Appellants' representative submitted a petition with seventeen signatures during the last public hearing on May 19, 2008. Although the petition does not specifically allege that Applicants' proposed project will not be in accordance with the purposes and terms of the Regulations, the language of the petition provides a clear statement of such concerns.[12] In making our determination, we are reminded by thirty-year-old precedent that "literal

---

[12] Appellants' petition includes a recitation of the language contained in 24 V.S.A. § 4465(b)(4) and their own narrative, which in part includes the following:

Our interest is that the provisions of the Town of Cabot New Telecommunications Facilities and Towers Bylaw be given due consideration in this instance given the likelihood that there will be future applications for new telecommunications within the Town. Any precedent set by the decision of the Cabot ZBA in this case has implications for preserving the value of the properties we own within the Town of Cabot. Our concern is that the provisions of the federal Telecommunications Act of 1996 that govern the authority of a local government over decisions regarding the placement, construction, and modification of personal wireless service facilities be thoroughly addressed in the RCC/Sousa application process.

Petition to Cabot Zoning Board of Adjustment, at 1 (May 19, 2008), a copy of which was supplied as Appellants' Exhibit 6.

9

compliance" is not a prerequisite to establishing standing as an interested person in a zoning appeal. Kalakowski v. John A. Russell Corp., 137 Vt. 219, 222–23 (1979). The petition before us makes clear that the petitioning Appellants were concerned that the project be made to comply with the applicable municipal bylaws, to the extent allowed by federal law.

AT&T would have this Court rely upon the e-mail notification by the ZBA Chair to the petitioners' spokesperson that their petition had been denied. However, we are confused by and therefore question the reliability of this e-mail notification for two reasons: first, the ZBA allowed petitioners to express their concerns during the ZBA hearing; second, the ZBA made reference to those concerns in its final determination. See ZBA Decision at 1. The ZBA Decision, which we have concluded here is the decision appealed from in these proceedings, makes no mention of party status or the alleged denial of that status to the petitioners. In fact, the ZBA Decision leaves the reader with the impression that the petitioners were allowed to offer their concerns and that the ZBA considered those concerns in rendering its determinations, albeit in favor of the applications.

The Court therefore concludes that Appellants have fulfilled the statutory requirements for interested person status under § 4465(b)(4) and therefore **DENIES** AT&T's request to dismiss this appeal on that basis.

We note that the Appellants who live within the immediate neighborhood of the Sousa site[13] may have an independent basis for party status. Those who "own[] or occupy[] property in the immediate neighborhood [of the proposed project] who can demonstrate a physical or environmental impact on [their] interest" and allege that the decision is not in accordance with the purposes or terms of the municipal bylaws. 24 V.S.A. § 4465(b)(3). Since it is not disputed that all four neighboring Appellants live in the immediate neighborhood and have alleged that the proposed facility violates the setback requirements established in the Town Bylaws, it appears undisputed that at least these four neighboring Appellants have an additional basis for asserting party status.

Our analysis on this point, however, causes us to closely examine the concerns expressed by Appellants, and whether these specific concerns may be relied upon in any determination of

---

[13] These Appellants are Andrew Leinoff, Gwenyth Jones, Steven Stahl and Sheri Stahl. AT&T would have us divide Appellants into two groups: Neighbor-Appellants and Petitioner-Appellants. Since Appellants have chosen a common reliance upon the petition filed with the ZBA, and have filed a common Notice of Appeal and a common Statement of Questions, we have chosen to treat Appellants as a common group.

10

whether or not to approve the pending applications. For the reasons more fully detailed below, we conclude that Appellants' concerns that this project will negatively impact their property values, because of possible RF emissions and fears related to them, are preempted by federal law and therefore cannot be asserted or relied upon in these zoning proceedings.

## II.    Negative impact on property values; federal preemption

Appellants assert several bases for their concern that this proposed siting of telecommunications equipment on or near the Sousa silo will have a physical or environmental impact on their interests that are protected by the Regulations. The two principal bases for Appellants' concerns include the proposed project's nonconformance with the telecommunications setback requirement of Regulations § 5.7(M) and the impact the proposed facilities will have on the character of the area, which is a conditional use requirement of Regulations § 2.7. In partial support of this latter concern, Appellants have asserted that area property values will be negatively impacted by the siting of telecommunications equipment at the Sousa property, due to the general public's "perception of health hazards" associated with telecommunications facilities and "by virtue of the violation of the zoning setback requirements." Town of Cabot Zoning Board of Adjustment, Meeting Minutes, at 2 (Apr. 21, 2008).[14]

We first note that the record is devoid of specific facts admissible into evidence indicating that property values in Cabot will decline as a result of Applicants' telecommunications facilities. The scientific studies on which Appellants rely are unavailing; they do not set forth specific facts made on personal knowledge of any witness from whom Appellants have secured an affidavit or the availability to testify at trial. V.R.C.P. 56(e) does not authorize reliance upon such unsubstantiated documentation; its admittance at trial would negate an opportunity by AT&T and this Court to make inquiry of its authors. Appellants have not presented a witness whose testimony would provide a legal foundation for the admissibility of these studies.

In the absence of admissible documentation, Appellants provide no rebuttal to the property value appraisal documentation[15] presented by Applicants, which indicated that the

---

[14] Applicants have submitted the Minutes as appendix Q to Exhibit 1 in their Motion for Summary Judgment filed on April 20, 2009.

[15] AT&T's property value appraisal documentation is supported by an affidavit of its author.

proposed facility will not measurably impact the value of surrounding property in Cabot. We are therefore left to conclude that this material fact is actually not disputed in the record presented. Opponents to a summary judgment motion "may not rest upon the mere allegations . . . [in their] pleadings[, but rather,] by affidavit or as otherwise provided in [V.R.C.P. 56,] must set forth specific facts showing that there is a genuine issue for trial." V.R.C.P. 56(e); see also Gore v. Green Mountain Lakes, Inc., 140 Vt. 262, 266 (1981) ("Time and again we have held that the opponent to a summary judgment motion may not rest on allegations [alone] . . . to rebut credible documentary evidence or affidavits.") (citations omitted).

AT&T asserts that Appellants' allegations here reveal that their concerns are founded upon a real or perceived fear of radio frequency emissions ("RF emissions") from the proposed facility, a concern that federal law prohibits as a basis for denial in a municipal proceeding.

We are guided by federal case law when seeking to understand the applicability of the federal Telecommunications Act of 1996 ("Telecommunications Act"). Most recently, the federal district court for the southern district of New York has opined that the Telecommunications Act preempts municipal regulation of RF emissions alleged to emanate from telecommunications facilities licensed by the Federal Communications Commission ("FCC"). N.Y. SMSA Ltd. Partnership v. Town of Clarkstown, 603 F. Supp. 2d 715, 735 (S.D.N.Y. 2009). The district court began its analysis with reference to the purposes of the Act, as passed by the U. S. Congress: "to facilitate the spread of new technologies nationwide[,] . . . . the Telecommunications Act imposes procedural and substantive obligations on local zoning authorities . . . ." Id. at 717. One such obligation imposed upon municipal regulatory authorities is to recognize the exclusive authority of the FCC to regulate RF emissions from telecommunications facilities. Id. at 722–23. The district court provides a detailed analysis of the doctrines of federal preemption in general and "implied preemption" in particular, although it completes this analysis with its conclusion "that there can be no serious dispute" concerning the Act's prohibition against express or implied attempts in a municipal regulatory proceeding to govern or impose conditions upon telecommunications facilities that are based upon concerns about RF emissions. Id. at 723. The court concludes its analysis on this issue by stating that it "will not belabor th[is] point" further. Id.

The district court makes reference to an oft-cited case from Vermont, decided by the United States 2nd Circuit Court of Appeals: Freeman v. Burlington Broadcasters, 204 F.3d 311

12

(2d Cir. 2000). <u>Freeman</u> ultimately involved the affirmation of a permit issued by the Town of Charlotte, Vermont, Zoning Board of Adjustment for a telecommunications facility. Neighbors concerned about the effect of RF emissions from the proposed facility initially appealed the ZBA approval to this Court; the permittees thereafter removed the matter to the federal courts, where the neighbors' appeal was dismissed by the district court. <u>In re Freeman</u>, 975 F. Supp. 570 (D. Vt. 1997). When the neighbors appealed that dismissal to the Second Circuit, the Court of Appeals rejected the neighbors' arguments and entered an affirmance of the original ZBA decision. <u>Freeman</u>, 204 F.3d at 326.

The Second Circuit's determination that the FCC enjoyed exclusive jurisdiction to regulate the impact of RF emissions from telecommunications facilities has remained the oft-cited law of this federal jurisdiction. See <u>N.Y. SMSA Ltd. Partnership</u>, 603 F. Supp. 2d at 722–29 and cases cited therein. Just as the district court for the southern district of New York concluded, "we need not belabor the point" that a municipal panel's review of concerns about RF emissions emanating from telecommunications facilities has been preempted by the Telecommunications Act.

Thus, we conclude that the Telecommunications Act prohibits review by the ZBA here, or this Court on appeal, of concerns about the real or perceived RF emissions from the facilities proposed for the Sousa silo, including the concerns expressed by some Appellants here that a "perception of health hazards" from RF emissions could cause a reduction of the value of their homes.

We share the Town's concern that a Court should act cautiously when asked to strike whole provisions of a zoning ordinance, as AT&T suggests here. Because we conclude here (as noted below) that we are uncertain, at this pre-trial stage of these proceedings, that the telecommunications setback provisions contained in Regulations §5.7(M) have a basis in some interest other than a fear of impacts from RF emissions, our conclusion here is limited to an express limitation upon Appellants' ability to introduce at trial any evidence based upon RF emissions' impacts or effects. The Telecommunications Act directs that only the FCC has authority to entertain such concerns.

## III.     Remand request

Appellants also assert that this Court should not conduct a hearing on the merits, although for different reasons and purposes than those asserted by AT&T. Appellants first contend that

13

because certain issues were not addressed by the ZBA, this Court should remand the pending applications back to the ZBA so that it may conduct all appropriate examinations. For the reasons stated below, we conclude that remand is not appropriate in this instance.

Appellants' remand requests are premised upon two primary objections: first, that the ZBA was obligated by Regulations § 5.6(C) to hire an independent consultant and failed to do so; second, that Applicants failed to submit an adequate five year plan for their facility, as mandated by Regulations § 5.8(A)(4). We take each argument in turn.

Appellants first argue that a remand is necessary because the ZBA rendered its conditional use approval without first engaging an independent consultant and that such an engagement is required by Regulations § 5.6(C). But a full reading of the Regulations brings us to a different interpretation.

The Regulations appear to contain contradictory language regarding the use of independent consultants. On the one hand, Regulations § 5.5, entitled "Provision for Hiring Independent Consultants," is clearly discretionary. It states that the ZBA "may hire independent consultants," and that the ZBA "may provide its independent consultant(s) with the full [conditional use] application for their analysis and review." Regulations § 5.5(A)–(B) (emphasis added). On the other hand, Regulations § 5.6, entitled "Findings of the Zoning Board of Adjustment," appears to mandate the opposite. It states that the "board of adjustment shall in consultation with independent consultant(s), make any of the following applicable findings before granting the conditional use permit." Regulations § 5.6(C) (emphasis added). Section 5.6 continues by enumerating eight specific findings related to the services and location of the proposed facility. When reading both regulatory provisions in unison, we do not interpret § 5.6 to mandate the use of consultants in making findings.

The paramount goal in construing municipal regulations is to give effect to the drafters' intent, which requires examining the entire regulation, along with its purpose, effect, and consequences. In re Eustance Act 250 Jurisdictional Opinion, 2009 VT 16, ¶ 35 (citations omitted). When viewing the Regulations as a whole, it is clear that the drafters intended by Regulations § 5.5(A) to authorize use by the ZBA of independent consultants, but to leave the ZBA (or this Court on appeal) with the discretion to determine whether a specific application warranted the use of independent consultants. In arriving at this interpretation, we find it

14

difficult to accept that the Regulations were crafted so as to require the hiring of an independent consultant in each and every instance.

With the direction of Eustance in mind, we arrive at an interpretation of Regulations § 5.6 that does not contradict § 5.5: Regulation § 5.6 directs that eight specific positive findings be made before a conditional use permit may issue, and that when making such factual determinations, the ZBA "shall" do so in consultation with an independent consultant, when in its discretion (exercised under § 5.5(A)) a consultant has been hired. In other words, the "shall" in § 5.6(C) speaks to the findings to be made before granting a permit; it does not speak to the hiring of consultants. Whether an application warrants the hiring of an independent consultant is left to the discretion of the ZBA, pursuant to Regulations § 5.5(A). This reading of § 5.6(C) allows us to give effect to both provisions of Article V. In so doing, we are construing the Regulations so that neither provision is rendered surplusage. Payea v. Howard Bank, 164 Vt. 106, 107 (1995).

The Court therefore concludes that the hiring of independent consultants was within the discretion of the ZBA. Failing to hire the consultants prior to issuing Applicants' conditional use permit does not mandate remand. Since we are afforded the same powers and authority that the ZBA enjoyed when it first considered the pending applications—In re Torres, 154 Vt. 233, 235 (1990)—we defer a determination concerning the $10,000 initially provided to the ZBA until our merits hearing is concluded. We reserve the right, as the ZBA had in the first instance, to direct the use of such monies for the hiring of an independent consultant. But we note that the record presently before us does not provide a factual issue within our jurisdiction for which we understand an independent consultant would be necessary.

Appellants also argue that Applicants' failure to submit some of the required documentation associated with the permit application requires remand. The Regulations provide that an "application shall be accompanied by a written five-year plan for the utilization of the proposed facilities," which "should include justification for capacity in excess of immediate needs, as well as plans for any further development." Regulations § 5.8(A)(4). Appellants allege that remand for a proper impact analysis by the ZBA in the first instance is required.

Contrary to Appellants' assertion, the record reveals that Applicants did submit a five-year plan as part of their project narrative. Letter from William Dodge, Attorney for Applicants,

15

to Carlton Domey, Cabot ZBA, at 3 (Mar. 10, 2008).[16] While the plan contained within Attorney Dodge's cover letter is brief, we note that it contains narrative that addresses the applicable provisions of Regulations § 5.8(A)(4). It explains how the facility will be used in the future: to close a gap in coverage Cabot residents previously identified in unrelated permit proceedings. Although the description is brief, the Regulations do not mandate the inclusion of any additional information; § 5.8(A)(4) merely says the plan "should" include more detail. The Court therefore concludes that the brevity of Applicants' submission does not warrant remand. We leave the determination as to its adequacy to support positive findings to our merits hearing.

## IV.    Issues remaining for trial

Our determination, summarized below, is that a trial is necessary to determine regulatory conformance, within the jurisdictional limits of municipal regulation of a telecommunication facility. In an effort to allow for the most efficient use of the parties' resources, as well as those of the Court, we attempt here to specify the regulatory provisions remaining at issue.

Appellants maintain that Applicants' proposed facility violates multiple provisions in the Regulations and results in more than a de minimus impact on the criteria established in those Regulations. In Cabot, no telecommunications facility or tower shall be erected without first obtaining a conditional use permit from the ZBA, which requires substantial compliance with a number of municipal regulations. Regulations § 5.6(A). However, a conditional use permit may issue if the ZBA determines "that a particular application will impose no impact or de minimus impact upon any criteria established in the bylaws." 24 V.S.A. § 4412(9). A de minimus determination under § 4412(9) therefore allows the ZBA to issue a telecommunications permit, irrespective of nonconformance with municipal regulatory provisions, as long as the impact on the interests that the bylaw criteria may lawfully serve is de minimus.[17]

This Court interprets § 4412(9) to require a municipal zoning board in the first instance, or this Court in the second instance, to perform a two step analysis. First, we must identify the applicable zoning criteria, and second, we must assess the proposed telecommunications facility's impact on the interests lawfully protected by the Regulations. This is the foundation

---

[16] Applicants have submitted the letter as appendix A to Exhibit 1 to their Motion for Summary Judgment.

[17] Section 4412(9) of Title 24 provides the de minimus exemption for municipalities that regulate telecommunications facilities through established bylaws. A similar de minimus provision found in 24 V.S.A. § 2291(19) applies to municipalities in which telecommunications facilities are not regulated by zoning or otherwise. Since Cabot has adopted zoning regulations, § 4412(9) is the provision applicable to these proceedings.

16

for our determination that a trial is necessary, for the record before us, while extensive, leaves the Court wondering what purposes the identified zoning criteria have been established to protect, other than purposes preempted by federal law.

The setback telecommunications facilities must respect—300 feet from boundary lines (Regulations § 5.7(M)(1)) and 1,500 feet from homes and similar structures (Regulations § 5.7(M)(2))—provides concise examples for the Court's uncertainty. First, to the extent that the telecommunications equipment was proposed to be housed on a tower of up to 300 feet, the Court can envision a legitimate, non-preempted interest that the boundary setback is meant to protect: the interest to minimize physical damage to a neighboring property. Whether a silo-based facility has more than a de minimus impact upon such a setback remains to be proved at trial. The Court is left to wonder what interest, outside of concerns regarding RF emission (which the Telecommunications Act precludes from consideration here), a 1,500 foot setback may lawfully protect, especially in regards to telecommunications equipment proposed to be sited on a pre-existing, eighty-foot-tall farm silo.

AT&T urges the Court to determine now, prior to trial, that the telecommunications setback provisions, as well as other regulatory provisions, have been enacted only to offer protection in response to fears concerning RF emissions. If this were indisputable on the record before us, the Court would be compelled to conclude that the applicable zoning provisions are in violation of the Telecommunication Act preemption provisions and must be stricken. Because the parties have not had a full and fair opportunity to offer a lawful foundation for the challenged regulations, we decline to do so prior to trial. We reserve the power, however, to strike such Regulations, if after trial there has been no evidence offered to show that the Regulations may be used to protect interests that are not preempted by the Telecommunications Act.

In addition to the setback provisions of Regulations § 5.7(M), Appellants assert that Applicants have failed to satisfy the primary coverage provisions contained in Regulations § 5.7(I), which states that "[i]f primary coverage (greater than 50%) from the proposed facility is outside Cabot, then the permit may be denied unless the applicant can demonstrate an inability to locate within the town which is primarily receiving coverage from the proposed facility." Regulations § 5.7(I). The parties agree that Cabot will receive less than fifty-percent of Applicants' proposed facility's coverage, but the parties dispute whether Applicants' have demonstrated an inability to locate elsewhere. AT&T has also provided further rationale for the

17

wisdom of siting the proposed telecommunications facility at the Sousa silo. Given this factual dispute, we conclude that a trial provides the best vehicle for resolution.

We note that Regulations § 5.7(I) includes discretionary language: a conditional use application may be allowed, even if primary coverage is outside Cabot, if an applicant demonstrates an inability to locate within the area primarily served. Applicant provided some evidence on this direct point, as well as provided persuasive testimony on the benefits of locating these facilities on a pre-existing silo and how this facility will complement AT&T's other facilities, so as to provide complete coverage to Cabot and the surrounding municipalities. However, Appellants have provided sufficient facts to establish a dispute on this issue; we await the facts presented at trial, so that a factual determination may be made.

AT&T urges that the Court render determinations now that the impact on these challenged Regulations are no more than de minimus, and that 24 V.S.A. § 4412(9) therefore allows for the pending applications to be approved in summary fashion. Because of the factual uncertainties identified above, such a summary conclusion would not be proper. Only after the close of disputed evidence will the Court be in a position to render a legal determination on whether the proposed facilities will have more than a de minimus impact on lawful Regulations and, if so, may the pending applications be approved.

Appellants have also challenged in Question 7 of their Statement of Questions, whether the proposed facility will adversely affect the character of the area and therefore be in conformance with Regulations § 2.7 concerning conditional use approval. We are again left to wonder whether Appellants challenges are premised on something more than a fear related to possible RF emissions. AT&T has presented specific facts suggesting that the character of the area will not be affected beyond a de minimus level. Both parties have requested summary judgment on this issue. When viewing these facts in a light most favorable to each respective non-moving party, we conclude that there are factual disputes that preclude the Court from entering summary judgment for either party and that this issue must also be addressed at trial.

## V. Permit conditions & amended application (Questions 9 and 10)

AT&T has also requested a summary judgment entry on the two final questions presented in Appellants' Statement of Questions. Question 9 asks whether the monitoring provisions in Regulations § 5.9 must be incorporated into any permit that issues; Question 10 asks whether

18

Applicants must amend their application to account for alterations to the proposed facility made in response to concerns raised during the ZBA hearings.

Applicants first argue that there is no legal foundation for the proposition that the Regulations require all permits that issue to include a full recitation of the general conditions governing land use in Cabot. We agree. Although Regulations § 5.9 mandates that all applicants take certain actions moving forward, nothing in § 5.9 requires the permit to include a specific recitation of these general conditions; all permittees who decide to rely upon a municipal land use permit must comply with these general conditions. Section 5.9 only indicates that a failure to comply with applicable monitoring provisions may be considered a violation of the permit and subjects the permit holder to penalties established in Regulations § 2.5. Since we conclude that the proper reading of Regulations § 5.9 does not mandate a specific recitation of these general conditions (since a permittee is automatically obligated to comply with the applicable general conditions), AT&T is **GRANTED** summary judgment as to Appellants' Question 9.

With regard to Question 10, AT&T argues that no further amendment is necessary because the ZBA approved an application that included the subsequent alterations made in response to concerns raised by the public. In fact, AT&T has provided an amended site plan to reflect the suggested alterations concerning the silo and adjacent equipment storage shed. Question 10 appears motivated by a concern that the record reflect accurate representations of the proposed project this Court is called upon to assess. Just as the ZBA was within its power to direct modifications to an applicant's site plan and proposal, this Court is empowered to consider the altered and amended site plan and application. Torres, 154 Vt. at 235. We understand that AT&T will provide at trial a site plan that reflects all the discussed alterations and that the revised plans will be the proposal AT&T requests that the Court approve. We also understand that AT&T has not suggested further alterations to its proposed facility, beyond those discussed with the ZBA. Summary judgment on Question 10 in Applicants' favor is therefore appropriate.

## Conclusion

For all of the reasons stated above, we conclude that Appellants have established that they are Interested Persons pursuant to 24 V.S.A. § 4465(b)(4), and therefore have standing to prosecute this appeal. We therefore **DENY** Applicants' motion to dismiss Appellants as parties and **GRANT** Appellants' summary judgment on their Question 6.

Left to be resolved at trial is whether the proposed telecommunications facility will have any impact (or no more than a de minimus impact pursuant to 24 V.S.A. § 4412(9)) upon the interests protected by Regulations § 5.7(M) (setbacks), § 5.7(I) (primary coverage), and § 2.7 (character of the area). However, we caution Appellants that, in light of our determinations here, municipal regulation of impacts from RF emissions or fear of the same is preempted by the federal Telecommunications Act and will therefore not be considered in these proceedings. To the extent that no interest, other than one based upon RF emissions, is presented at trial as the foundation for the interests protected by Regulations §§ 5.7(M), 5.7(I), or 2.7, the Court reserves the authority to determine that the proposed facility will have no impact, and further reserves the authority to determine that the challenged Regulations are preempted by the Telecommunications Act and therefore not enforceable.

Lastly, Applicants are **GRANTED** summary judgment as to Appellants' Questions 9 and 10.

A pre-trial telephone conference will be scheduled with the Case Manager after January 1, 2010 to determine the scheduling of trial. The Court requests that the parties confer, so that they may be prepared to discuss at that conference the anticipated length and scheduling of trial.

Done at Berlin, Vermont, this 30th day of December 2009.

_____
Thomas S. Durkin, Environmental Judge

20