2005 VT 115

## Dale PROVOST, et al. v. FLETCHER ALLEN HEALTH CARE, INC.

[890 A.2d 97]

No. 04-185

¶ 1. October 6, 2005. Plaintiffs Dale and Brenda Provost appeal a decision of the Chittenden Superior Court granting defendant Fletcher Allen Health Care, Inc.'s (FAHC) motion for summary judgment in a medical malpractice suit. We agree that the trial court should not have granted summary judgment, and therefore reverse and remand.

¶ 2. On October 26, 2000, plaintiff Dale Provost went to the Colchester Family Health Care Clinic, which is owned and operated by FAHC, to receive treatment for a severe allergic reaction. Dr. Vivian Esparza, M.D., treated Mr. Provost, and, among other things, administered an intramuscular injection of benadryl into his left arm. During the shot, Mr. Provost said "ouch." Dr. Esparza asked if the shot hurt and then said, "perhaps I touched the bone with the needle. I'll pull it back out a little bit." She then finished the injection. Shortly after receiving the shot and returning to his home, Mr. Provost began experiencing numbness and pain in his left arm. He contacted the Clinic and was told to return to see Dr. Esparza the next day. After seeing Mr. Provost at the follow-up appointment on October 27 and consulting with a neurologist, Dr. Esparza concluded that he most likely had a radial nerve palsy "secondary to [a] hematoma beneath the neuronal sheath from yesterdays [sic] benadryl injection."

¶ 3. In November 2001, Dr. John Johansson, D.O., evaluated Mr. Provost. Dr. Johansson determined that Mr. Provost had sustained permanent, significant impairment to the radial nerve in

his left arm as a result of the benadryl injection.

¶ 4. In December 2002, Mr. Provost and his wife filed suit, alleging that Dr. Esparza had negligently administered the injection, damaging the radial nerve, and that FAHC was vicariously liable under the doctrine of respondeat superior.

¶ 5. FAHC filed a motion for summary judgment in December 2003, contending that plaintiffs had failed to produce sufficient expert testimony to establish the elements of medical malpractice. Plaintiffs then designated Dr. Johansson as their medical expert, filed a supplemental interrogatory response, and filed a brief in opposition to summary judgment supported by an affidavit from Dr. Johansson. Dr. Johansson based the statements in his affidavit upon his review of Mr. Provost's medical records, Dr. Esparza's deposition transcript, and his November 2001 examination of Mr. Provost.

¶ 6. Specifically, Dr. Johansson opined, "to a reasonable degree of medical certainty," that "Dr. Esparza failed to exercise the appropriate degree of care" when she administered the benadryl injection because she "insert[ed] the needle to the point it made contact with the bone of the arm and injured the radial nerve." He also stated that as a "direct result" of the injection, Mr. Provost "suffered significant nerve injury to the radial nerve in his left arm," equating to "28% whole person impairment." Finally, he concluded that Dr. Esparza's failure to exercise the appropriate degree of care was a proximate cause of Mr. Provost's injuries, without which the injuries would not have occurred.

¶ 7. In response, FAHC challenged whether Dr. Johansson, who is an osteopathic physician with a practice in sports medicine, was competent to serve as an expert in the case. FAHC also questioned whether Dr. Johansson's statements were made upon personal knowledge. Finally, FAHC argued that summary judgment was required because Dr. Johansson's affidavit did not articulate a relevant standard of care, offer any details on how Dr. Esparza's treatment breached the standard of care, or establish that a breach of the requisite standard of care proximately caused Mr. Provost's injury. Plaintiffs filed a response that addressed Dr. Johansson's credentials and reaffirmed that statements in the affidavit were made according to Dr. Johansson's personal knowledge.

¶ 8. The superior court granted FAHC's motion, ruling that plaintiffs' expert affidavit consisted of conclusions that fail to "stand up to even a lenient scrutiny of proof." In particular, the court emphasized that Dr. Johansson did not enunciate the standard of care owed to Mr. Provost by Dr. Esparza and failed to explain how Dr. Esparza deviated from the standard of care and thereby caused Mr. Provost's injury.

¶ 9. On appeal, plaintiffs assert that the court failed to give them, as the nonmoving party, the benefit of all reasonable doubts and inferences when it concluded that plaintiffs' expert affidavit was insufficient to survive summary judgment. We agree. Plaintiffs provided an expert affidavit that states, to a reasonable degree of medical certainty, that Dr. Esparza deviated from the standard of care, proximately causing Mr. Provost's injury. While the affidavit provides little explicit reasoning, it articulates a theory of the case sufficient to withstand summary judgment. In effect, the trial court weighed Dr. Johansson's theory against other possible explanations for Mr. Provost's injury and granted summary judgment because plaintiffs had not eliminated those explanations as viable theories. On summary judgment, however, the question is not how plaintiffs'

theory measures up against any other — that weighing is left to the trier of fact.

¶ 10. On appeal, this Court reviews a motion for summary judgment de novo, employing the same standard as applied by the trial court. *Hardwick Recycling & Salvage, Inc. v. Acadia Ins. Co.*, 2004 VT 124, ¶ 14, 177 Vt. 421, 869 A.2d 82. To prevail on a motion for summary judgment, the moving party must show there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. V.R.C.P. 56. Where a genuine issue of material fact exists, summary judgment may not serve as a substitute for a determination on the merits. *Human Rights Comm'n v. Benevolent & Protective Order of Elks*, 2003 VT 104, ¶ 11, 176 Vt. 125, 839 A.2d 576.

¶ 11. Defendant advocates that we should apply an abuse of discretion standard in our review of this case. The abuse of discretion standard is inapposite here, however, because the trial court did not rule on the admissibility or foundation of Dr. Johansson's affidavit. See *General Electric Co. v. Joiner*, 522 U.S. 136, 141-43 (1997) (holding that on a motion for summary judgment the admissibility of expert testimony is reviewed under the abuse of discretion standard); *Sharp v. Transp. Bd.*, 141 Vt. 480, 486, 451 A.2d 1074, 1076 (1982) ("Rulings as to the foundation of an expert's testimony is a matter of discretion with the [trial] court."). The issue in the present case is whether plaintiffs have established a genuine issue of material fact such that the case cannot be resolved on summary judgment. Therefore, the usual Rule 56 standard applies.

¶ 12. A plaintiff bringing a medical malpractice claim must prove:

(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by a reasonably skillful, careful, and prudent health care professional engaged in a similar practice under the same or similar circumstances whether or not within the state of Vermont.

(2) That the defendant either lacked this degree of knowledge or skill or failed to exercise this degree of care; and

(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

12 V.S.A. § 1908. The statute codified the common law elements of medical malpractice, which have "traditionally included a requirement that the plaintiff adduce evidence of a reasonable probability or reasonable degree of medical certainty that the defendant's conduct caused the injury." *Smith v. Parrott*, 2003 VT 64, ¶ 11, 175 Vt. 375, 833 A.2d 843 (quotations omitted). Except where the alleged violation of the standard of care is so apparent that it can be understood by a layperson without the aid of medical experts, the burden of proof imposed by § 1908 requires expert testimony. *Larson v. Candlish*, 144 Vt. 499, 502, 480 A.2d 417, 418 (1984).

¶ 13. First, the trial court held that Dr. Johansson's affidavit did not enunciate a standard of care. In his affidavit, however, Dr. Johansson opined that "among other things, Dr. Esparza failed to exercise the appropriate degree of care during that injection by inserting the needle to the point it made contact with the bone of the arm and injured the radial nerve." One can then reasonably infer that, in plaintiffs' view, the requisite standard of care is to not insert the needle so deeply that it contacts the bone and injures the radial nerve. Drawing such an inference in plaintiffs' favor, as we must at the summary judgment stage, we conclude that the affidavit satisfied plaintiffs' bur-

den under 12 V.S.A. § 1908(1), although we agree that the better practice is for the affiant to expressly articulate the standard of care.

¶ 14. The trial court next concluded that Dr. Johansson's affidavit failed to explain "how Dr. Esparza's actions actually caused plaintiff's injuries." The court summarized its reasoning as follows:

> The problem with Dr. Johansson['s] statements is that they lack any such factual evidence or reasoning. To say Dr. Esparza failed to exercise reasonable care because the needle hit the bone and injured the radial nerve begs the question. That is, it assumes that Dr. Esparza's physical injection hit the nerve. As hospital points out, that is not necessarily the case. A hematoma could have caused the injury or the medication itself may have caused it.

¶ 15. By weighing Dr. Johansson's theory against other possible causes of Mr. Provost's injuries, the trial court failed to give the nonmoving party the benefit of all reasonable doubts and inferences, and instead implicitly weighed the merits of plaintiffs' case. Summary judgment is improper where the evidence is subject to conflicting interpretations, regardless of a judge's perceptions of the comparative plausibility of facts offered by either party or the likelihood that a party might prevail at trial. In other words, summary judgment is not warranted simply because the movant offers facts that "'appear more plausible than those tendered in opposition, or because it appears that the adversary is unlikely to prevail at trial.'" *Braun v. Humiston*, 140 Vt. 302, 308, 437 A.2d 1388, 1390 (1981) (quoting 10 C. Wright & A. Miller, Federal Practice and Procedure § 2725, at 513 (1973)), *overruled on other grounds by Soucy v. Soucy Motors, Inc.*, 143 Vt. 615, 471 A.2d

224 (1983). Further, "it is not for the trial judge to adjudicate who is more credible, plaintiff or defendants and their affiants, in the context of a motion for summary judgment." *Pierce v. Riggs*, 149 Vt. 136, 139-40, 540 A.2d 655, 657 (1987). Accordingly, the fact that the court may have believed Dr. Johansson's explanation of the cause of Mr. Provost's injuries was as plausible as, or less plausible than, other possible explanations is not a proper basis for a summary judgment. Indeed, by juxtaposing plaintiffs' explanation for Mr. Provost's injuries against other possibilities, the court's order suggests that a genuine, triable issue exists.

¶ 16. We recognize that a party opposing summary judgment cannot rely on "bare allegations" to demonstrate disputed facts, and a party may not avoid summary judgment "any time [it] secures an expert to support its claim." *Morais v. Yee*, 162 Vt. 366, 372, 648 A.2d 405, 409 (1994). Dr. Johansson's expert affidavit does more than make bare allegations. It lays out a theory of the case to be developed at trial — namely, that Dr. Esparza breached the standard of care by inserting the needle too deeply into Mr. Provost's arm, and that doing so caused his injury. Optimally, an expert affidavit submitted in opposition to a summary judgment motion will lay out in greater detail the reasoning behind the expert's conclusions than did the affidavit at issue here. But Dr. Johansson's affidavit does more than "merely make[] it possible for the fact in issue to be as alleged" or raise "a mere conjecture, surmise, or suspicion." *Peterson v. Post*, 119 Vt. 445, 451, 128 A.2d 668, 671 (1957).*

---

* The trial court relied on the above-quoted language from *Peterson* in holding that the affidavit's conclusion "does not stand up to even a lenient scrutiny of proof." *Peterson* held that mere surmise

¶ 17. In conclusion, Dr. Johansson's affidavit articulates, albeit sparsely, a theory of plaintiffs' medical malpractice case sufficient to defeat summary judgment. And although there may exist competing explanations for Mr. Provost's injury, the comparative plausibility of the parties' theories will be determined at trial. "[B]ecause of its severe consequences, summary judgment should be granted cautiously so that no one will be improperly deprived of a trial of disputed factual issues." *Margison v. Spriggs*, 146 Vt. 116, 118, 499 A.2d 756, 758 (1985) (citation omitted). Here, plaintiffs did enough to raise a disputed factual issue. Therefore, the trial court should not have granted summary judgment.

*Reversed and remanded for further proceedings consistent with this opinion.*

¶ 1. October 24, 2005. Lakeisha Jackson and Brenda Edwards appeal from a family court order that awarded Thomas Hendricks legal and physical parental rights and responsibilities for Elijah Hendricks. Appellants contend that: (1) the Vermont family court lacks or conjecture "is an insufficient foundation for a *verdict*" in a very different procedural context — review of a motion for directed verdict at the close of all evidence in the case. 119 Vt. at 451, 128 A.2d at 671 (emphasis added).