Hitchcock v. Emergency Servs. of New England, Inc., No. 620-12-09 Wmcv (Wesley, J., June 6, 2011)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

**STATE OF VERMONT**

| | |
|---|---|
| **SUPERIOR COURT** | **Civil Division** |
| **Windham Unit.** | **Docket No. 620-12-09 Wmcv** |

**JOHN HITCHCOCK, EXECUTOR OF
THE ESTATE OF IRENA GONYER and
FRANK GONYER,**
  **Plaintiffs**


  **v.**


**EMERGENCY SERVICES OF
NEW ENGLAND, INC., et al.**
  **Defendants**


<u>**Opinion and Order re Defendants'
Motion for Partial Summary Judgment**</u>


  In September of 2008, a physician's assistant at the Springfield Hospital Urgent Care Facility located in Bellows Falls, Vt. erroneously determined that Irena Gonyer was having an acute heart attack after reviewing an EKG taken on a different patient. As a result, Ms. Gonyer was given several medications which caused her to suffer a stroke and ultimately led to her death. The eight Defendants named in this action include the medical personnel and medical facilities involved with the treatment of Ms. Gonyer. Currently pending is the Motion for Partial Summary Judgment of Defendants Emergency Services of New England, Inc. ("ESNE"), Warren Montgomery, Richard Marasa, and Springfield Hospital("Hospital") (referred to herein as "Defendants"). Based on the following, Defendants' Motion for Partial Summary Judgment is **GRANTED** in part and **DENIED** in part.

  Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, referred to in the statements required by Rule 56(c)(2), show that there is no genuine issue as to any

material fact and that any party is entitled to judgment as a matter of law." V.R.C.P. 56(c)(3). The party moving for summary judgment has the burden of proof, and the opposing part must be given the benefit of all reasonable doubts and inferences in determining whether a genuine issue of material fact exists. *Price v. Leland*, 149 Vt. 518, 521 (1988).

## Facts

On September 13, 2008, Irena Gonyer was seen at the Springfield Hospital's Urgent Care facility in Bellows Falls where an EKG was administered. Physician's assistant ("PA") Warren Montgomery read the EKG report he believed was associated with testing administered to Ms. Gonyer and concluded that she was having an acute heart attack. However, the EKG came from another patient, eventually determined to have been taken many months previously, and Ms. Gonyer was not having a heart attack.

Ms. Gonyer was transferred by ambulance to the Springfield Hospital where she received two additional EKGs and other testing. These EKGs did not indicate that Ms. Gonyer was having a heart attack. However, based on the initial EKG erroneously attributed to Ms. Gonyer, PA Benjamin Holobowicz consulted with a cardiology resident at Dartmouth-Hitchcock Medical Center ("DHMC") in Lebanon, New Hampshire. The cardiology fellow recommended the administration of blood thinning and clot busting medications. These medications were administered and caused Ms. Gonyer to suffer a stroke. Ms. Gonyer was transferred to DHMC where physicians and surgeons performed emergency brain surgery to slow the inter-cranial bleeding. Ms. Gonyer never recovered and died several months later.

Springfield Hospital's Urgent Care facility is staffed primarily by fourteen PAs.

Dr. Richard Marasa is the only supervising physician who oversees these PAs. Dr. Marasa works ten hours per week in direct patient care and was not present at the facility at the time of the accident. Each PA's Scope of Practice agreement, which is incorporated into each licensure petition to the Board of Medical Practice, requires that the PA work "simultaneously" with the primary supervising doctor during approximately 50% of clinical hours.

## Procedural History

This motion for partial summary judgment was filed subsequent to a similar motion for partial summary judgment filed by Defendant Benjamin Holobowicz. In Mr. Holobowicz's motion for partial summary judgment, he argued that (1) Mr. Gonyer could not recover for loss of consortium after the death of Irena Gonyer; (2) Mr. Gonyer could not maintain a claim for "extreme emotional distress" against him because the evidence supported neither the elements of intentional infliction of emotional distress nor negligent infliction; and (3) Plaintiffs could not recover punitive damages against him because he was, at most, negligent.

Plaintiffs responded that (1) Mr. Gonyer was only seeking to recover for loss of consortium for the time period after the accident but before Ms. Gonyer's death; (2) that Mr. Gonyer was not seeking any claim of emotion distress from Mr. Holobowicz; and (3) that Plaintiffs were not seeking punitive damages from Mr. Holobowicz. Plaintiffs explained in a footnote that their claim for extreme emotional distress was directed primarily at the Hospital and ESNE, citing Restatement (Second) Torts § 46. Based on the absence of any substantial opposition, Defendant Holobowicz's motion for partial summary judgment was granted without extensive analysis.

3

The pending motion purports to "join in Co-Defendant Benjamin Holobowicz' Motion for Partial Summary Judgment in Defendants' favor as to Plaintiff Frank Gonyer's claims for loss of consortium, Frank Gonyer's claims for 'extreme emotional distress,' and any claims for punitive damages." In addition, Defendants seek summary judgment as to Count VI of Plaintiff's Amended Complaint, regarding the staffing policy of Springfield Hospital. Defendants briefed the issues of the Hospital's staffing policy and punitive damages, but did not argue the issues of loss of consortium or extreme emotional distress. In response, Plaintiffs addressed only the two arguments briefed by Defendants.

## Discussion

### 1. Frank Gonyer's claim for loss of consortium after the death of Ms. Gonyer.

In response to Mr. Holobowicz's motion for partial summary judgment, Plaintiffs explained that they are not seeking to recover for loss of consortium after Ms. Gonyer's death. It is clear that Plaintiff Frank Gonyer cannot recover for loss of consortium from any Defendant for the time after the death of Ms. Gonyer. See Restatement (Second) Torts § 693, cmt. f ("In case of death resulting to the impaired spouse, the deprived spouse may recover under the rule stated in this Section only for harm to his or her interests and expense incurred between the injury and death. For any loss sustained as a result of the death of the impaired spouse, the other spouse must recover, if at all, under a wrongful death statute."). Therefore, summary judgment on this claim must be **GRANTED**.

**2. Frank Gonyer's claim for extreme emotional distress.**

This issue of Mr. Gonyer's extreme emotional distress has not been adequately briefed by either party. The previous motion only addressed this claim as it applied to Mr. Holobowicz and was uncontested by Plaintiffs. In response to that motion, while disclaiming any such cause of action against Mr. Holobowicz, Plaintiffs made clear that they believed that there is a basis for an emotional distress claim against several of the Defendants who now move for partial summary judgment. Yet, Defendants have not offered further analysis to illuminate this issue.

On the other hand, Plaintiff has supplied scant explanation as to how the facts support a finding that the moving Defendants caused him extreme emotional distress. Nevertheless, on the current record, the Court cannot conclude that there are no material facts in dispute, or that Defendants are entitled to judgment as a matter of law. V.R.C.P. 56. Defendants' motion for summary judgment on this claim is therefore **DENIED**.

**3. Plaintiffs' claim regarding the Springfield Hospital's staffing policy.**

By Count VI of their complaint, Plaintiffs allege that Ms Gonyer's injuries and eventual death were "the direct and proximate result of the official policies of Springfield Hospital which authorizes physician's assistants to diagnose and treat patients in an urgent care department and in an emergency department outside the presence of and without the direct supervision of physicians." In the next paragraph of Count VI, Plaintiffs further allege that this "official policy wantonly and maliciously ignores the demands and complexities of urgent and emergency care."

By their motion for summary judgment, statement of undisputed facts and supporting exhibits, Defendants purport to establish that the Hospital's policies with

5

respect to its employment of physician's assistants, as well as the supervisory duties exercised by Defendant Richard Marasa, M.D., met the standard of care in every respect. According to Dr. Marasa's affidavit, each PA employed by Springfield Hospital is required to petition the Board of Medical Practice every two years in order to remain licensed. That process requires that the PA file a statement, endorsed by Dr. Marasa as the supervising physician, outlining his or her scope of practice. With respect to the PAs furnished to Springfield Hospital under contract with Defendant ESNE, the scope of practice agreement is provided by ESNE and approved by the Board of Medical Practice. All PAs involved in Ms. Gonyer's care were properly licensed at the time of the incidents which are the subject of Plaintiffs' complaint. The Board of Medical Practice has never disapproved ESNE's scope of practice agreement, as submitted by each PA and endorsed by Dr. Marasa, either before or since that time.

Plaintiffs dispute none of these assertions.[1] However, their approach to responding to Defendants' motion for summary judgment is not a model of clarity when attempting to discern the basis for their claim in Count VI. In their Statement of Facts

---

[1] Indeed, as argued by Defendants, Plaintiffs' approach to Rule 56 practice entitles Defendants to claim that all facts as set forth in their Statement of Undisputed Facts are deemed admitted. V.R.C.P.56(c)(2) provides: "The opposing party shall include with the affidavits and memorandum filed under paragraph (1) a separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. The statements of material facts required to be served under this paragraph shall consist of numbered paragraphs and shall contain specific citations to the record." Instead of the procedure required by the Rule, Plaintiffs include their Statement of Facts within their memorandum, not separately, including 39 exhibits which arguably reflect "specific citations to the record". Yet, in a separate Response to Emergency Services of New England's, Warren Montgomery's, Richard Marasa's and Springfield Hospital's Statement of Undisputed Material Facts, Plaintiffs purported citations to the record are, in fact, citations to the Statement of Facts in their memoranda. Thus, to attempt to identify Plaintiffs' evidentiary basis for disputing Defendant's claimed undisputed facts, the Court is required to flip back to Plaintiffs' memorandum, and then follow any references to the exhibits appended to the memorandum. This laborious endeavor is exactly what the Supreme Court condemned in *Webb v. Leclair*, 2007 VT 65, ¶6, 182 Vt. 559 ("[f]orcing courts to sift through nearly fifty pages of narrative in order to find contested and uncontested facts is precisely the type of 'needle in a haystack' search the rule is meant to avoid").

section, at ¶ ¶ 67-69, Plaintiffs insert several legal propositions, including "[i]t is unprofessional conduct (not simply malpractice) for a physician to assign a physician's assistant to tasks if those physician's assistants are not trained or qualified to perform those tasks"; "[u]nprofessional conduct is separate and distinct from a deviation from the standard of care"; "Dr. Marasa's deliberate failure to work simultaneously with the 14 physician's assistants acting under his care manifests a gross disregard for the rights of patients at the Springfield Hospital Emergency Department". It is curious that these assertions are couched as statements of fact, and even more curious that Plaintiffs fail to offer any further analysis of these legal propositions in their memorandum.

After the initial "Statement of Facts", Plaintiffs' memorandum addresses Defendant's "Staffing Policy for Their Emergency Department". In this section Plaintiffs argue that "the policies of the Springfield Hospital preclude Mr. Holobowicz and other physician's assistants from conforming to the *Scope of Practice Agreement*". In particular, Plaintiffs note that portion of the agreement under the heading "Supervision" which provides: "P.A. work (sic) simultaneously with the primary supervising MD for approximately 50% of clinical hours".[2] Plaintiff's memorandum argues further, "[t]here is simply no way that the 14 physician's assistants who staff the Springfield Hospital Emergency Department 24 hours per day, seven days per week, 168 hours per week, can 'work simultaneously' with Dr. Marasa, who spends only 10 hours per week in direct

---

[2] The Agreement goes on: "When the primary MD is not on premises, he is available by phone. When the primary supervising MD is absent, the secondary supervising physician is available at all times either on premises or by phone. At all times, the PA has the full complement of on-call medical staff at their disposal, in major specialties. On call physicians are always available for consultation, evaluation, and admission per hospital by-laws and respond to the Emergency Department when requested. Supervising physician reviews 100% of patient counters and co-signs each record after having done such." Plaintiffs have not demonstrated that the portions of the Scope of Practice Agreement specifically contemplating patient care by PAs outside the direct physical supervision of a supervising physician violate any regulation or standard of care, nor that the mechanisms for consultation and evaluation contemplated by the Agreement were inadequate in Ms Gonyer's case.

patient care."

Though the tone of Plaintiffs memorandum makes plain their belief that Defendants' deviation from the requirement that PAs work "simultaneously with the primary supervising MD for approximately 50% of clinical hours" is patent, they support the argument with little beyond arithmetic. Even acknowledging the "simply no way" argument, Plaintiffs' fail to explain, much less support with evidence, the relationship between a violation of "the 50% rule" and any injuries to Ms. Gonyer. Also, while it appears undisputed that Dr. Marasa was not present during the treatment of Ms. Gonyer by the PAs at the Springfield Hospital facilities, Plaintiff proffers neither evidence nor law to demonstrate that such physical absence either presents a departure from the standard of care, or was causally related to Ms. Gonyer's injuries.

Despite the confusing presentation of Plaintiffs' allegations regarding deficiencies in Springfield Hospital's staffing policy, the Court is satisfied that they do no more than raise a claim of medical negligence, and the Court examines the claim in that light.[3] In medical negligence, as in tort law generally, a plaintiff has the burden of proving the applicable standard of care, that defendant breached that standard, and that as a proximate result plaintiff suffered injuries that would not otherwise have occurred. 12 V.S.A. § 1908. Except where the alleged violation of the standard of care is so apparent that it can be understood by a layperson without the aid of medical experts, the burden of proof in medical malpractice action requires expert testimony. *Provost v. Fletcher Allen Health*

---

[3] In ¶ 67 of their Statement of Facts, in ostensible support of the proposition that "unprofessional conduct is separate and distinct from a deviation from the standard of care", Plaintiffs cite to Ex. 38, which is a copy of 26 V.S.A. § 1354, and which defines "unprofessional conduct" in the context of proceedings before the Board of Medical Practice. Assuming this reference is intended to support the existence and parameters of the cause of action framed in Count VI of Plaintiffs' complaint, it is wholly inadequate in the absence of further analysis and authorities.

*Care, Inc.*, 2005 VT 115, ¶12, 179 Vt. 545.

The standard of care regarding a hospital's staffing policy is not so apparent that it can be understood by a layperson. This conclusion follows easily when considering the level of regulatory oversight such policies receive by governmental authorities as demonstrated by Defendants' Statement of Undisputed Facts, both as a matter of hospital practice, as well as the licensing requirements for physician's assistants. The failure to offer an expert opinion to establish the standard of care, and that Defendant's deviation from it caused injury to Plaintiffs' decedent, is therefore fatal to this claim. *Provost*, 2005 VT 115, ¶12. In addition, Plaintiffs' argument fails to address, let alone support, how the staffing policy or lack of Dr. Marasa's physical presence played any causal role in the adverse outcome suffered by Ms. Gonyer. Therefore, summary judgment must be **GRANTED**.

**4. Plaintiffs' claim for punitive damages**

Plaintiffs assert that they are entitled to punitive damages stemming from their claim that Dr. Marasa and Springfield Hospital were willing to ignore the great risk of harm caused by the staffing policy in order to secure higher profits.

Punitive damages are permitted upon a showing of (1) wrongful conduct that is outrageously reprehensible, and (2) malice. *Fly Fish Vt., Inc. v. Chapin Hill Estates, Inc.*, 2010 VT 33, ¶18, 187 Vt. 541. Malice is "defined variously as bad motive, ill will, personal spite or hatred, reckless disregard, and the like." *Id.* Negligence alone without malice cannot support the imposition of punitive damages. *Id.* at ¶24. Recklessness can support an award of punitive damages so long as there is "evidence that the defendant acted, or failed to act, in conscious and deliberate disregard of a known, substantial and

9

intolerable risk of harm to the plaintiff, with the knowledge that the acts or omissions were substantially certain to result in the threatened harm." *Id*.

To establish the requisite malice, Plaintiffs posit an outrageous willingness to put profit over patient safety. However, as already examined, Plaintiffs have failed to demonstrate that the Hospital's staffing policy represents a deviation from the standard of reasonable and ordinary medical care, to say nothing of a deviation that rises to the level of outrageous conduct motivated maliciously by a profit-seeking mentality.

Except for the unsupported claims regarding the staffing policy, Plaintiffs do not allege any malice and the Court cannot find any indication of bad motive, ill will, personal spite or hatred, or reckless disregard required to support an award of punitive damages. While the results in this case were tragic, the conduct of the Defendants—as demonstrated by the evidence in the summary judgment record—amounts, at worst, to simple negligence which can never by itself support an award of punitive damages. *Fly Fish*, 2010 VT 33, ¶24. Therefore, summary judgment on this issue must be **GRANTED**.

Based on the foregoing, it is hereby **ORDERED:**

Defendants' motion for summary judgment on the issue of Mr. Gonyer's claim for loss of consortium after the death of Irena Gonyer is **GRANTED**.

Defendants' motion for summary judgment on the issue of Springfield Hospital's staffing policy, is **GRANTED**.

Defendants' motion for summary judgment on the issue of punitive damages is **GRANTED**.

Defendant's motion for summary judgment on the issue of extreme emotional distress is **DENIED**.

10

DATED                              , at Bennington, Vermont,


                                   _____
                                   John Wesley
                                   Presiding Judge