**State of Vermont**
**Superior Court—Environmental Division**

======================================================================
# ENTRY REGARDING MOTION
======================================================================

**Town of North Hero v. Herrington**                    **Docket No. 125-9-12 Vtec**

Title: Cross Motions for Summary Judgment (Filing Nos. 1 & 2)

Filed: 1/31/2013 (both motions)

Filed By: Defendant Larry Herrington; Town of North Hero, Vermont

Town's Opposition to Defendant's Motion for Summary Judgment filed on 2/21/2013.

Defendant's Opposition to Town's Motion for Summary Judgment filed on 2/27/2013, together
   with a Reply to Town's Opposition to Defendant's Motion for Summary Judgment

Town's Reply filed on 3/12/2013

   _X_ Granted in part for Defendant                    _X_ Denied in part

On September 25, 2012, the Town of North Hero, Vermont ("Town") filed with this
Court a complaint for enforcement against Defendant Larry Herrington ("Defendant") related
to recreational vehicles ("RVs") and a lean-to structure on his commercial property. Both
Defendant and the Town have moved for summary judgment. For the purpose of putting the
pending motions into context, we recite the following facts, which we understand to be
undisputed unless otherwise noted.

1.  Defendant owns[1] property located on Route 2 in the Town known as the Carry Bay
    Campground and Cottages, where he rents out campsites for profit ("the Property").

2.  On August 28, 2002, Defendant filed a conditional use application to replace a metal
    trailer on the property with a garage. See Defendant's Exhibit 2.[2] Defendant
    subsequently requested a variance for this change as well. See Defendant's Exhibit 4.

3.  On January 29, 2003, before the hearing on Defendant's application, Defendant received
    a notice of violation ("NOV"), for "[c]onstruction of the new deck on the main house at
    Carry Bay campground without a setback variance or building permit on a non-
    conforming lot." See Defendant's Exhibit 8. Defendant did not appeal the NOV.

4.  On February 28, 2003, the Town of North Hero Board of Adjustment ("the Board")[3]
    noticed a hearing for March 20th, concerning Defendant's application for a permit to

---

[1] The parties' pleadings alternatively list the owners and operators of the Carry Bay Campground as
Larry Harrington, Chad Harrington, and/or Toadcha, Inc. We ask the parties to clarify the current
ownership interests in the subject property.

[2] Defendant submitted Exhibits 1 through 24 on January 31, 2013 with his initial motion for summary
judgment. The Town submitted Exhibits 1 through 18 on January 31, 2013 with its initial motion for
summary judgment. All other references to Exhibits in this Entry Order are to these respective Exhibits.

[3] The land use municipal panel in the Town of North Hero was formerly called the Board of Adjustment;
today it is called the Development Review Board. For simplicity, we use the term "Board" throughout
this Decision.

construct a storage building and a variance for a deck on the main house. The notice did not mention Defendant's request for a setback variance in relation to the garage.

5. In a letter dated March 13, 2003, the Chair of the Board wrote to Defendant to confirm the date and time of the hearing, but also notified him of a number of other concerns regarding other alleged zoning violations on Defendant's property, including "recent conversion of one of the cabins from a 18 x 16 foot seasonal cabin with an attached 18 x 8 foot enclosed porch to a 18 x 24 foot house, without the required conditional use permit to allow this change of use." (Defendant's Exhibit 10 at 2, filed Jan. 31, 2013.) The letter additionally stated:

> [I]f you wish to extend or change the above permitted uses, as with the request for a garage, the Board must review all uses to determine that the total uses do not exceed the capacity of use on the property. Although this does not mean that any one particular use must be discontinued, it does mean that some uses may have to be changed, modified, or discontinued to allow for new or different uses. One such change which we discussed at our last meeting was to replace and reposition the bath house with the proposed garage. Furthermore, it may be determined that the changes made to one of the cottages constitutes a change of use, and thus will require some additional modifications to the total use of this property.

Id at 2. (Copy supplied as Defendant's Exhibit 10.)

6. Defendant attended the March 20, 2003 hearing but left before the Board went into deliberative session and ultimately reached a conclusion.

7. The Board issued a written decision on March 25, 2003. In re Appl. of Toadcha, Inc, #8779-C (property tax map parcel #07-02-81), Findings of Fact and Conclusions of Law (Town of North Hero Bd. of Adjustment, March 25, 2003) ("the March 2003 decision"). See Town Exhibit 9. The March decision begins by stating that the Board considered "Application 8779-C in the hearing [on the application] of Carry Bay Camp Ground, as per T 24 4402 (c) [sic[4]] for replacement of a trailer with a garage." Id. at 1. The introductory portion of the decision does not reference any of the zoning violations asserted in the March 13th letter from the Board's Chair.

8. The March 2003 decision does not reference, act upon, or even mention the variance application submitted on behalf of the Campground (#8851-V), even though the variance application is referenced in the minutes of the Board's March 20, 2003 meeting (Town's Exhibit 8).

9. The March 2003 decision does not reference, act upon, or even mention the deck on the main house that was referenced in the February 28, 2003 notice of the March 20, 2003 hearing (Defendant's Exhibit 9), nor does any mention of the deck appear in the minutes of the Board's March 20, 2003 meeting.

---

[4] This reference appears to be to the statutory authorization for conditional use approvals, albeit with a typographical error. That authorization was previously codified in 24 V.S.A. § 4407, but was later transferred to 24 V.S.A. § 4414(3) in connection with the re-write of title 24 as part of the Permit Reform Act of 2004.

10. The March 2003 decision does discuss one existing cabin that Defendant had already modified by transforming an enclosed porch into permanent living space, characterizing this modification as an unpermitted change in use. The decision also discusses similar porch-to-living-space conversions proposed for three other seasonal camp cabins on the Property. The decision ultimately permits the as-built change in use for the first cabin as well as the similar proposed renovations for the other three cabins.

11. The March 2003 decision also approves the proposed garage to replace the trailer and a bathhouse. The new garage was to be located in a different place than the trailer.

12. The March 2003 decision states, "The request for the garage was reviewed with respect for the other uses and the other structures, including RV use." Id. at 3.

13. The March 2003 decision also includes a list of six conditions, four of which directly relate to the garage and the bathhouse and trailer it was to replace. The other conditions are:

    - A site plan is required. The site plan must include the areas in which the six permitted RVs will be used and must show the right of way deeded to Bob and Beverly Camp in addition to other structures and traffic access.

    - The use of RVs will be limited to only those with self contained sewage systems.

    Id at 3. (copy supplied as Town's Exhibit 9.)

14. On April 4, 2003, Defendant notified the Board that he did not agree with the conditions imposed and was therefore "withdrawing" his application. (Defendant's Exhibit 13.)

15. The Town responded to Defendant with a letter dated April 14, 2003, informing Defendant that the Town was "not certain of what issues are of concern to you," because it was "unaware of any request you made which we did not grant." (Defendant's Exhibit 14.) The letter speculates that Defendant's concern might relate to the condition requiring the removal of a septic tank and invites further communication. Defendant did not respond to the Town's letter. Id.

16. Defendant never appealed the March decision, nor did he ever build the proposed garage. It is unclear from the record whether Defendant effectuated the proposed conversion of the porches on the three cabins to living space as mentioned in the March 2003 decision or whether Defendant removed or modified the front porch on the main house.

17. On June 30 of 2012, the current Zoning Administrator sent Defendant a letter alleging several zoning violations, specifically alleging that (1) a lean-to on the property lacked a building permit and (2) violations of the conditions referenced in the March 2003 decision have continued, specifically, allowing more than six RVs on the property and failing to submit a plan showing six permitted RV sites for RVs with self-contained sewage systems. A copy of this June 30, 2012 NOV was presented as Town Exhibit 12 and formed the basis for the zoning enforcement complaint that the Town filed to initiate this action.

18. Defendant did not file an appeal for the June 30, 2012 NOV. That NOV therefore became final on July 16, 2012.

19.    During Memorial Day weekend 2012, there were at least fourteen RVs/campers on the Property, and during most of the summer of 2012 there were consistently nine or more RVs/campers on the Property.  Four RVs were stored on the Property during the winter of 2012–2013.

20.    Defendant has not filed a site plan with the Town or sought a building permit for the lean-to structure.

**Discussion**

We begin our analysis with a basic premise: that summary judgment may only be granted to a moving party upon a showing that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  V.R.C.P. 56(a); V.R.E.C.P. 5(a)(2).  We must "accept as true the [factual] allegations made in opposition to the motion for summary judgment" and give the non-moving party the benefit of all reasonable doubts and inferences.  Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356 (internal citation omitted); see V.R.C.P. 56(c) (laying out summary judgment procedures).  When considering cross-motions for summary judgment, we look at each motion individually and give the party opposing a motion the same benefit as a non-moving party.  City of Burlington v. Fairpoint Communications, 2009 VT 59, ¶ 5, 186 Vt. 332 (citing Toys, Inc. v. F.M. Burlington Co., 155 Vt. 44, 48 (1990)).

In considering a motion for summary judgment, our function is "not to make findings on disputed factual issues."  Blake v. Nationwide Ins. Co., 2006 VT 48, ¶21, 180 Vt. 14; Gettis v. Green Mtn. Econ. Dev. Corp., 2005 VT 117, ¶ 19, 179 Vt. 117.  In addition, the Court does not judge the credibility of the parties or their witnesses or the weight of the facts offered through the affidavits submitted on summary judgment.  Provost v. Fletcher Allen Health Care, Inc., 2005 VT 115, ¶ 15, 179 Vt. 545 (stating that summary judgment is not warranted simply because a movant offers facts that appear more plausible than those tendered in opposition, or if one party appears unlikely to prevail at trial).  With these procedural doctrines in mind, we consider the parties' respective summary judgment motions.

## I.    Violations of the April 2003 permit

The parties disagree over whether and to what extent the March 2003 decision may bind Defendant to the conditions it sets out.  Defendant argues that the March decision, including the conditions imposed, is not binding on him because he withdrew his application and the Town accepted his withdrawal request by responding to his letter.  Alternatively, he argues that the permit, including the conditions imposed, expired automatically in 2005, because he did not build the garage.  See Town of North Hero Zoning Regulations § 325(I) (providing that a permit automatically expires after two years unless substantial work has been completed).

The Town agrees that an applicant cannot be forced to proceed with a development permit and emphasizes that it does not seek to enforce those conditions from the 2003 decision specifically relating to the construction of the garage.  Instead, it argues that the Board's decision encompassed both the proposed garage application and violations related to unpermitted construction on the Property.  The Town argues that, in light of the zoning violations mentioned in the Board Chair's letter of March 13, 2003 (Defendant Exhibit 10), the Board could and did impose other conditions that Defendant was required to carry out, "regardless of whether [Defendant] constructed the garage that was the impetus for the application."  (Town's Mot. for Summ. J. at 6, filed Jan 31, 2013.)

The Town argues that the conditions it now seeks to enforce are tied to the portions of the March 2003 decision addressing violations on the Property. The Town further argues that the March 2003 decision was never appealed, amended, or revoked, and that Defendant's letter rejecting his permit did not constitute an appeal; accordingly, the conditions addressing violations on the Property became final and binding under 24 V.S.A. § 4472(d) when the appeals period expired.

We conclude as a matter of law that the portions of the 2003 decision pertaining to the proposed garage expired in 2005 when Defendant did not substantially complete his proposed project. Thus, the Board's conditions related to the garage are unenforceable. Likewise, any conditions the Board may have imposed[5] to cure the zoning violations are unenforceable, because the record shows that none of the violations addressed in the March 2003 decision were properly noticed.

The Vermont Supreme Court has held that a notice of violation must inform the parties receiving it of (1) the factual basis for the allegation of a zoning violation; (2) the action to be taken against the targeted person or property; and (3) the procedures available to cure or challenge the threatened action. Town of Randolph v. Estate of White, 166 Vt. 280, 284–5 (1997). The only violations mentioned in the March 2003 decision were not properly noticed, either in a formal NOV or in the Board Chair's March 13, 2003 letter to Defendant confirming the date of the hearing. That letter outlines the factual basis for certain violation allegations, including the conversions of porches to living space on several cabins, but does not explain what action would be taken against Defendant for non-compliance, nor does it explain the procedures available to cure or challenge the allegations of zoning violations.[6] The Board action in 2003 was further deficient when it did not give notice that it intended to address those zoning violation allegations at its March 20, 2003 hearing and took no arguments or evidence regarding the violations before it began its deliberations.

Thus, the Town does not have the authority, based on the Board's March 2003 decision alone, to require Applicant to submit a site plan limiting the number of campsites to six. Our conclusion does not preclude the Town from otherwise seeking to enforce any existing zoning violations on the Property. We specifically decline in this proceeding to address the scope of any grandfathered right that Defendant may have to continue unpermitted uses on the property or any claim that some grandfathered uses may have been diminished or abandoned, due to non-use. We note that the record does not show that Defendant ever applied for any permit for authority to complete corrective measure concerning the porch-to-living-space conversions of the cabins or that the public ever received notice that the DRB would discuss the issue at its hearing. Thus, to the extent that the March 2003 decision appears to grant approval for such conversions, that approval also cannot stand.

---

[5] Unfortunately, it is not clear from the record presently before us whether the conditions that the Town now seeks to enforce (those requiring the submission of a site plan showing a maximum of six RV sites and limiting the use of the Property to RVs with self contained sewage systems) were imposed in relation to the garage, to the violations, to both, or to neither. The March 2003 decision takes a holistic approach that makes discerning such distinctions difficult. As noted above, we do not reach this question.

[6] Although the January 29, 2003 NOV properly noticed a violation stemming from the "[c]onstruction of the new deck on the main house," the Board's March 2003 decision does not mention this violation. The 2003 NOV made no reference to any other alleged zoning violations. See Town's Exhibit 7.

## II.   The lean-to structure

The portion of the June 30, 2012 NOV addressing the lean-to structure does not concern Defendant's 2003 permit.  Defendant asserts that the lean-to was constructed before 1996, while the Town maintains that the structure was built in 2007.  The Town further contends that Defendant is referencing a different lean-to structure on his property.  Both sides support their contentions with evidence conforming to the requirements of V.R.C.P. 56(c).  The identity of the offending lean-to and the date of its construction are disputed material facts.  Only a trial will allow this Court to determine whether the structure was a pre-existing nonconformity and therefore whether this Court should grant the Town's request for injunctive relief.  Because a dispute of material fact exists, we cannot decide this issue on summary judgment.  See V.R.C.P. 56(a); Blake v. Nationwide Ins. Co., 2006 VT 48, ¶21, 180 Vt. 14 (a court deciding a summary judgment motion is not to make findings on disputed factual issues).

### Conclusion

For the reasons detailed above, we **GRANT** summary judgment to Defendant, concluding that the Town may not, on the basis of the Board's 2003 decision alone, require a site plan limiting the Property to six campsites.  Our ruling here does not preclude the Town from noticing and prosecuting alleged zoning violations that continue to exist on Defendant's property.  We **DENY** both parties' motions for summary judgment regarding the lean-to structure, however, as disputes of material facts prevent us from ruling on that issue on summary judgment.  We will therefore schedule a trial to resolve the remaining factual and legal issues concerning the legality of the already-constructed lean-to structure.

_____          _____May 10, 2013_____
          Thomas S. Durkin, Judge                                         Date

===============================================================================

Date copies sent: _____          Clerk's Initials: _____

Copies sent to:

   Paul Gillies, Esq., attorney for the Town of North Hero

   Defendant Larry Herrington