VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.      24-AP-115



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

NOVEMBER TERM,   2024

Clayton E. Butler\* v. Town of Westmore

}  APPEALED FROM:
}  Superior Court, Orleans Unit, Civil Division
}  CASE NO. 44-2-20 Oscv
   Trial Judge: Daniel P. Richardson

In the above-entitled cause, the Clerk will enter:

Plaintiff appeals the civil division's order granting summary judgment to defendant Town of Westmore in this wrongful-termination action. We affirm.

The following facts are undisputed for purposes of summary judgment except where otherwise noted. Plaintiff began working part-time for the Town in 2015 as a member of the road crew. He received a copy of the Town's personnel policy when he was hired. He signed acknowledgements in 2015 and 2016 stating that the policy was not a contract of employment.

In 2017, the Town promoted plaintiff to road foreman. Plaintiff was responsible for supervising the road crew and plowing and maintaining town roads. In this role, he supervised two other employees, Burton Hinton and, beginning in 2019, Reilly Auger. Hinton was a member of the Town selectboard when he was hired in October 2017. Hinton stepped down from that position in March 2018.

Plaintiff and Hinton's relationship deteriorated after they began working together. Plaintiff asserted that Hinton routinely arrived late to plow the town transfer station. Plaintiff also alleged that Hinton damaged equipment, questioned plaintiff's directives, and told others that plaintiff treated him badly. Hinton alleged that plaintiff bullied him, screamed at him, and made him do the worst jobs. It is undisputed that prior to the end of 2018, plaintiff did not impose any discipline on Hinton or ask the selectboard to do so, and Hinton did not make any formal complaints or seek discipline against plaintiff. However, the selectboard and others in town were aware of the poor relationship between plaintiff and Hinton.

In December 2018, the selectboard met with plaintiff in executive session to discuss his complaints against Hinton. The selectboard did not take any formal action at this meeting other than conducting a one-year performance review of plaintiff and hiring an additional employee, Reilly Auger.

In January 2019, Hinton was transferred to the town transfer station. This action did not remove Hinton from the road crew, but it limited Hinton's direct contact with plaintiff. The change did not resolve the problems between plaintiff and Hinton. The selectboard subsequently appointed one of its members, Peter Hyslop, to supervise Hinton. During this time, Hyslop learned of allegations that plaintiff was using the town garage to do repairs on personal vehicles. Hyslop also received calls from residents complaining about the conditions on certain sections of roads.

In April 2019, the selectboard met in executive session and received statements from the town clerk and road-crew member Auger. The town clerk said that the problems between plaintiff and Hinton were getting worse, for which she blamed plaintiff. Auger reported that plaintiff had used town equipment to plow a private business, disabled a safety alarm on town equipment, screamed at a member of the public while on duty, disparaged Hinton in front of other road crews at a meeting, installed video cameras in the town garage, and took excessive amounts of the Town's diesel fuel for his personal truck.

After this meeting the selectboard directed Auger to record plaintiff. The Town asserts that it only asked Auger to photograph the video cameras installed by plaintiff. Auger believed he was directed to record plaintiff and subsequently did so without plaintiff's knowledge.

On April 17, 2019, the selectboard met in executive session with plaintiff. Plaintiff was told that the purpose of the meeting was to "get to the bottom of the personnel stuff." At the meeting, the selectboard presented plaintiff with a memorandum stating that it was suspending him without pay for two weeks. The memorandum alleged that plaintiff violated the personnel policy by plowing private property with town equipment, verbally abusing a member of the public while on duty, authorizing Auger to take stone from the Town for personal use, disparaging Hinton to others, and installing a video camera in the town garage without selectboard permission. Plaintiff told the selectboard that if it took any of the items seriously, it could consider his signature on the memorandum to be his two-week notice. He signed the memorandum. A selectboard member suggested that plaintiff take the weekend to consider his response. Plaintiff either refused or did not answer and left the meeting. The selectboard came out of executive session and announced that plaintiff had resigned as road foreman. At the same meeting, the selectboard issued written warnings to Hinton and Auger.

A few days after the meeting, plaintiff communicated to one of the selectboard members that he would return to work if Hinton and Auger got "a two hour ass-chewing" and were suspended for two weeks without pay, Hyslop resigned from the selectboard, plaintiff received pay for the two weeks he was suspended, and plaintiff was not challenged again. Several days later, plaintiff texted the same selectboard member, "So can I go back to work on Thursday?" The selectboard member told him no. In early May, plaintiff, through counsel, requested to the selectboard that he be allowed to return to work and that he not be required to supervise or otherwise work with Hinton. The Town did not accept his request.

In February 2020, plaintiff filed a complaint against the Town alleging wrongful termination by constructive discharge in breach of an implied employment contract; promissory estoppel; wrongful termination in breach of the implied covenant of good faith and fair dealing; wrongful termination in violation of public policy; negligent supervision; intentional interference with contract; violation of due process; and violation of Vermont's Open Meeting Law. The parties filed cross-motions for summary judgment in June 2023.

In March 2024, the civil division issued a written decision granting summary judgment to the Town on all of plaintiff's claims. The court concluded that plaintiff voluntarily resigned, noting that plaintiff did not present evidence of sustained discriminatory action by management or serious infringement of a fundamental right necessary to support a finding of constructive discharge. The court determined that no policy or practice modified the parties' at-will employment relationship such that plaintiff had a right to progressive discipline or the option to withdraw his resignation. It further determined that his offer to return under certain conditions was not a withdrawal of his resignation. It concluded that plaintiff's tortious-interference claim failed because selectboard members acting within the scope of their authority were not a third party to plaintiff's employment relationship with the Town. Finally, the court rejected plaintiff's claim that the Town violated the Open Meeting Law, concluding that the April 17, 2019 meeting was appropriately noticed, plaintiff never invoked any right he may have had to seek public hearing, and any violation could not have been cured under the statutory safe-harbor provision due to plaintiff's intervening resignation. This appeal followed.

We review a motion for summary judgment de novo using the same standard as the trial court. Provost v. Fletcher Allen Health Care, Inc., 2005 VT 115, ¶ 10, 179 Vt. 545 (mem.). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). When determining whether a genuine dispute of fact exists, we give the nonmoving party "the benefit of all reasonable doubts and inferences," and "accept as true the allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material." Gates v. Mack Molding Co., Inc., 2022 VT 24, ¶ 13, 216 Vt. 379 (quotations omitted).

On appeal, plaintiff argues that the Town's adoption of a personnel policy providing for a progressive disciplinary process and pre- and post-termination hearings could be interpreted by a jury to have modified his at-will employment relationship to create an implied employment contract. He argues that there is a genuine dispute regarding whether the Town's discipline of him violated its policies and practices. He further claims that there is sufficient evidence for a jury to find that the Town constructively discharged him by wrongfully forcing his involuntary resignation and to support his tortious-interference-with-contract, due-process, and Open-Meeting-Law claims.[1]

The viability of most of plaintiff's claims depends on his assertion that he was constructively discharged by the Town. We therefore examine the record to determine whether a reasonable jury could find in plaintiff's favor on that issue. We first considered the concept of constructive discharge in In re Bushey, in which a state employee who resigned from his job claimed that "there were improper actions by his employer so threatening and coercive that his resignation should be viewed as compelled rather than as his voluntary act, thus justifying review and remedy under the law applicable to discharge without cause." 142 Vt. 290, 292 (1982). We concluded that the employer's acts of changing the employee's schedule and moving his office did not support the employee's contention of "intolerable working conditions" with a "deliberate purpose to provoke a quit." Id. at 297. We explained:

> A difficult employment environment can generate a voluntary
> resignation. Involuntariness, in this sense, must be the product of

---

[1] Plaintiff does not challenge the court's award of summary judgment to the Town on his claims of wrongful termination in violation of public policy or negligent supervision.

> purposeful actions [by the employer] directed at obtaining the resignation. Moreover, the cases which have found involuntary discharge to have occurred consistently reveal sustained discriminatory acts by management or at the least, a serious infringement of a fundamental right . . . .

Id. at 298 (citations omitted); see also Green v. Brennan, 578 U.S. 547, 555 (2016) (explaining that for purposes of Title VII, "[t]he constructive-discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that his working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign" (quotation omitted)).

The evidence put forth by plaintiff, construed in the light most favorable to him, is insufficient for a reasonable jury to conclude that the Town purposefully created a hostile work environment, discriminated against plaintiff, or acted in a manner designed to force him to resign. Although town officials were aware that plaintiff and Hinton did not get along, neither plaintiff nor Hinton formally complained to the selectboard prior to the meeting in December 2018. The selectboard's actions after that point and prior to plaintiff's resignation cannot reasonably be viewed as aimed at forcing plaintiff to quit. Plaintiff essentially concedes this, as he asserts that he first learned he was in a hostile work environment during the April 17 meeting. However, the fact that the selectboard presented plaintiff at that meeting with a memorandum stating that it was suspending him without pay for two weeks for his alleged violations of the personnel policy did not, by itself, create intolerable working conditions. See Bailey v. N.Y.C. Bd. of Educ., 536 F. Supp. 2d 259, 266 (E.D.N.Y. 2007) (holding that employer's act of bringing disciplinary charges against plaintiff did not by itself create intolerable work atmosphere that converted plaintiff's resignation into constructive discharge); Carmellino v. Dist. 20 of N.Y.C. Dep't of Educ., No. 03 CIV 5942 PKC, 2006 WL 2583019, at *54 (S.D.N.Y. Sept. 6, 2006) (holding no reasonable jury could find that mere fact that defendant had accused employee of incompetence, insubordination, conduct unbecoming and neglect of duty created hostile work environment). "Moreover, when an employee resigns rather than respond to disciplinary charges, the resignation cannot later be construed as a constructive discharge." Bailey, 536 F. Supp. 2d at 266.

Plaintiff argues that the trial court ignored evidence that he was extremely upset and surprised by the allegations in the memorandum and the unpaid suspension, which showed that he was subjected to intolerable working conditions that rendered his resignation involuntary. Accepting plaintiff's testimony about his emotional state as true, it does not create a triable issue about whether he was forced to resign, because there is no other evidence of the Town acting in a threatening, discriminatory, or coercive manner towards him. Cf. Green v. Town of E. Haven, 952 F.3d 394, 409 (2d Cir. 2020) (holding trial court erred in granting summary judgment to employer on constructive-discharge age-discrimination claim where employee accused of theft resigned after being told by investigator that supervisor and coworkers no longer trusted her and wanted her to leave and that if investigation report was upheld she would likely be fired, and that her own union representative told her she would lose pre-termination hearing); Young v. Sw. Sav. & Loan Ass'n, 509 F.2d 140, 144 (5th Cir. 1975) (concluding employee was constructively discharged in circumstances amounting to religious discrimination where she submitted her resignation after telling supervisor that she did not attend monthly staff meeting due to her objection to religious exercises, and supervisor responded that she had to attend meetings and could simply close her ears during religious exercises); Bushey, 142 Vt. at 297 (rejecting claim that employee was constructively discharged when employer changed his schedule and moved

4

his office, and employee submitted letter of resignation after overhearing conversation that led him to incorrectly assume he would be fired). Plaintiff's subjective feelings about the meeting were insufficient to demonstrate intolerable working conditions.

Plaintiff argues, however, that the Town's actions after the April 17, 2019 meeting amounted to a constructive discharge. Plaintiff claims that the Town had a practice of allowing employees to withdraw their resignations, pointing to evidence that in 2018, the selectboard allowed another employee to withdraw her resignation and return to work under unnamed conditions she proposed. Plaintiff also cites Hyslop's statement during deposition that in general, if an employee sought to withdraw their resignation within the notice period, the selectboard "would consider it." Plaintiff argues that despite this practice, the Town refused to let him withdraw his resignation and instead effectively terminated him during the notice period. He cites the selectboard's announcements of his resignation at the April 17 and April 29 meetings, the town clerk's text message to him on April 22 that she was preparing his final paycheck, and Hyslop's alleged statement to the town clerk that if plaintiff asked for his job back, "it won't happen."

Taken in the light most favorable to plaintiff, this evidence demonstrates merely that one employee was allowed to withdraw her resignation subject to certain unnamed conditions, and that the Town was generally willing to consider an employee's proposal to withdraw his or her resignation during the notice period. It would not allow a jury to conclude that plaintiff had an absolute right to withdraw his resignation during the notice period or that the Town was obligated to reinstate him if he did so.

Furthermore, the evidence does not support plaintiff's assertion that he asked to go back to work without any conditions. In his only formal request to the selectboard, he indicated that he would return to work if he was not required to supervise or work with Hinton. This would be a change from his previous role; it is undisputed that at the time plaintiff resigned, Hinton was still a member of the road crew, and the selectboard represented to Hinton in its written warning that plaintiff would still be his supervisor. Plaintiff presents no evidence or authority for the notion that the selectboard was required to allow him to rescind his resignation subject to this condition.

Finally, the evidence would not permit a reasonable jury to conclude that the Town fired plaintiff during the notice period. The selectboard's announcements after the April 17, 2019 meeting that plaintiff had resigned were simply statements of fact and do not create a reasonable inference that it was attempting to force him to quit. Similarly, the town clerk's message informing plaintiff that she was preparing his final paycheck does not support his claim that he was forced out, where he had given his two-week notice and was entitled to receive payment for unused vacation time. Hyslop's alleged statement to the town clerk is minimally probative of any nefarious intent by the Town and is insufficient to create a genuine dispute over whether the Town constructively discharged plaintiff. This case is therefore unlike Kelley v. Department of Labor, in which we held that an employee was terminated from her position for purposes of unemployment-compensation benefits where she gave three weeks' notice and intended to keep working during that time, but employer then fired her four days later. 2014 VT 74, ¶ 10, 197 Vt.

Here, plaintiff was suspended for two weeks, at which point he gave his two weeks' notice. The Town's acceptance of his notice does not constitute a constructive discharge.[2]

Because the undisputed facts viewed in the light most favorable to plaintiff demonstrate that he voluntarily left his employment with the Town, we need not address whether the Town's personnel policy modified the at-will employment relationship. Assuming that plaintiff was entitled to the process set forth in the policy, which calls for verbal and written warnings prior to the imposition of suspension, he forfeited that right by preemptively resigning. Thus, plaintiff's remaining wrongful-termination claims (counts I-III) and his due-process claim (count VII) necessarily fail. His tortious-interference-with-contract claim (count VI) is likewise premised on the selectboard's alleged interference with his employment relationship through constructive discharge, so he has failed to demonstrate a necessary element of that claim as well.[3]

We therefore turn to plaintiff's remaining claim, which is that the Town violated the Vermont Open Meeting Law, 1 V.S.A. §§ 310-314, by failing to provide sufficient notice of the April 17, 2019 meeting or inform him of his right to a public hearing and by taking formal action during the executive session.

Section 312(c) of Title 1 requires the selectboard to publicly announce "[t]he time, place, and purpose" of the meeting at least twenty-four hours before the meeting by "post[ing] notices of special meetings in or near the municipal clerk's office and in at least two other designated public places in the municipality." The Town provided evidence to demonstrate that it complied with this requirement by posting a copy of the agenda to the Town's website, as well as the bulletin boards inside and outside the town clerks' office and at a local store at least twenty-four hours prior to the meeting. While plaintiff objects that the documents are unreliable and have not been authenticated, plaintiff has not shown that the Town would be unable to offer this evidence in an admissible form at trial. V.R.C.P. 56(c)(4). He has therefore failed to demonstrate a genuine dispute of fact on this issue.

Plaintiff also argues that the Town violated 1 V.S.A. § 313(a)(4) by failing to inform him that he had a right to a public hearing. The cited provision states that a public body, such as the selectboard, may not hold an executive session except to consider certain enumerated issues, including "a disciplinary or dismissal action against a public officer or employee; but nothing in this subsection shall be construed to impair the right of such officer or employee to a public hearing if formal charges are brought." Even if plaintiff had such a right here, the plain language

_____

[2] We note that several courts have held that even an employer's early acceptance of an employee's resignation does not constitute an adverse employment action under Title VII. See Wilson v. Bradley Petroleum, Inc., No. 12-CV-01260-RPM, 2013 WL 4502266, at *2 (D. Colo. Aug. 23, 2013) ("An employer's early acceptance of an employee's resignation does not constitute an 'adverse employment action' under Title VII."); Vasquez v. Potomac Hosp., Inc., No. 1:10–CV–216, 2010 WL 3984685, at *6 (E.D. Va. Oct. 8, 2010) ("Plaintiff resigned of his own accord, and his argument that [employer's] early acceptance of the resignation was retaliatory termination is without merit.").

[3] Plaintiff also alleged in his complaint that the Town intentionally interfered with his ability to enter into another contract with the Town by waiting for over three months to post a notice for applications for the position of road foreman. Plaintiff did not pursue this theory in his motion for summary judgment or opposition to the Town's motion, and we therefore do not address it on appeal.

of § 313(a)(4) does not require the selectboard to affirmatively inform a public officer or employee of any right to a public hearing. See Rutland Herald v. Vt. State Police, 2012 VT 24, ¶ 12, 191 Vt. 357 (explaining that when interpreting statutory language, we examine the plain meaning, "and if the plain meaning resolves the interpretation issue, we generally look no further"). The failure to do so is therefore not a violation of § 313(a)(4), and the trial court properly granted summary judgment on this claim as well.

Lastly, we conclude that plaintiff lacks standing to assert his claim that the Town violated § 313(a) by taking formal action during an executive session. To satisfy the jurisdictional prerequisite of standing, plaintiff must "show (1) injury in fact, (2) causation, and (3) redressability." In re Bruyette, 2022 VT 3, ¶ 6, 216 Vt. 184 (quotation omitted). "Because standing is a necessary component of the court's subject matter jurisdiction, it cannot be waived, and its absence can be raised at any time." Id.; see also Alberino v. Balch, 2008 VT 130, ¶ 7, 185 Vt. 589 (mem.) ("We will not reverse the trial court's decision if the record below reveals any legal grounds that would justify the result."). Assuming that plaintiff qualifies as "any person aggrieved" such that he was entitled to seek enforcement of the Open Meeting Law after the Town denied and refused to cure the alleged violation, 1 V.S.A. § 314(c), plaintiff did not allege injuries sufficient to confer standing under the law. He was present at the executive session that he challenges, and he did not provide evidence or even allege that any member of the public was excluded from any portion of the meeting. See Severson v. City of Burlington, 2019 VT 41, ¶ 19, 210 Vt. 365 (affirming dismissal for lack of standing of complaint brought by member of Burlington Conservation Board alleging that board violated Open Meeting Law by holding final review meeting for proposed development behind closed doors, because he provided no evidence that anyone was denied access or deterred from entering meeting). The trial court therefore properly denied his Open-Meeting-Law claim.

Affirmed.

BY THE COURT:

---

Paul L. Reiber, Chief Justice

---

Karen R. Carroll, Associate Justice

---

William D. Cohen, Associate Justice

7